## DRAVO v. FABEL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 142. Argued December 4, 1889. — Decided December 16, 1889.

When the plaintiff in a suit in equity does not waive an answer under oath, the defendant's answer, directly responsive to the bill, is evidence in his behalf.

The statute of Pennsylvania providing that a party in a suit in equity may be examined as a witness by the other party as if under cross-examination, and that his evidence may be rebutted by counter testimony, has no application to suits in equity in courts of the United States held within the State.

The party offering in a court of the United States in Pennsylvania a deposition taken under that statute, makes the witness his own, and is not at liberty to contend that he is not entitled to credit.

A decision of a District Court on a question of fact, affirmed by the Circuit Court, will not be disturbed by this court unless the error is clear.

IN EQUITY. The case is stated in the opinion.

*Mr. D. T. Watson* (with whom was *Mr. William S. Pier* on the brief) for appellants.

*Mr. G. A. Jenks* for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

By two deeds, one dated January 22, 1876, reciting a consideration of $10,000, and the other, dated January 26, 1876, reciting a consideration of $18,000, and both executed, acknowledged and delivered to the grantees on the last-named day, John Dippold and wife conveyed to Philip Fabel and Kate Fabel, his wife, (the latter being a daughter of the grantors,) two tracts of land in the county of Beaver, State of Pennsylvania. Both deeds were recorded in the proper office, but not until the 16th day of February, 1878.

On the 1st of March, 1878, John Dippold, John H. Dippold, Martin Dippold and Jacob H. Dippold, doing business under the name of John Dippold & Sons, were adjudged bankrupts

by the District Court of the United States for the Western District of Pennsylvania. Their assignees in bankruptcy, duly appointed and qualified, were the present appellants; who, June 13, 1879, brought this suit in the same court against the appellees.

The bill alleged that neither of the grantees possessed means sufficient for the purchase of these lands, and that the deeds to them were executed with the intent and purpose of hindering, delaying and defrauding the creditors of John Dippold, and to prevent the lands from going to, and being distributed by, his assignees in bankruptcy. It, also, alleged a conspiracy and combination between Dippold and the grantees, pursuant to which the former was to make said conveyances in order that the lands could be held by the grantees for the benefit of themselves and of John Dippold, discharged from the claims of his creditors; and that the deeds were a mere contrivance between him and them, whereby the lands "were to be in such condition as to the title thereof that if at any time the said John Dippold should become seriously and financially embarrassed it might be made to seem" that he "was not the owner of said properties."

It further alleged that, in January, 1876, John Dippold, as a member of his firm, was largely engaged in business, borrowing large sums of money down until the date of the petition in bankruptcy, and that during all that time he and the respondents conspired to have it believed by the public generally, and by creditors dealing with him, that he was the owner of these lands, and, by reason of such belief, creditors would be and were, induced to trust and confide in his financial responsibility.

The relief sought was a decree declaring the deeds null and void, fraudulent as to creditors, and vesting no right in the grantees, as against Dippold's creditors and assignees in bankruptcy, and requiring Fabel and wife to release and convey their apparent title to the assignees in bankruptcy.

The bill was sworn to, and did not waive the oath of the defendants to their respective answers.

The answers, which were under oath, besides putting in issue

all the material allegations of the bill, averred that the transactions evidenced by the deeds were *bona fide;* that the deeds were executed and delivered at their respective dates; and that the consideration named in each was paid by the grantees to Dippold in money.

The District Court dismissed the bill with costs, and a similar decree was rendered upon appeal in the Circuit Court.

The only error assigned is the refusal of the Circuit Court to declare the deeds to Philip Fabel and his wife to be fraudulent and void as to the creditors and assignees in bankruptcy of John Dippold.

This case does not present any difficult question of law. Its determination depends entirely upon the special facts and circumstances disclosed by the evidence.

Conceding that the case was an uncommon one, and that some of its circumstances tended to excite suspicion as to the integrity of the transaction between Dippold and his grantees, the conclusion of the District Court was that the clear weight of the evidence was on the side of the defendants, and that the bill should be dismissed. It was accordingly so decreed. *Dravo* v. *Fabel,* 25 Fed. Rep. 116. A similar decree was passed in the Circuit Court.

The answers of the defendants, being directly responsive to the bill, are evidence in their behalf, the plaintiffs not having waived, as they might have done, answers under oath. *Conley* v. *Nailor,* 118 U. S. 127, 134; 41st Eq. rule, as amended.

Besides, the depositions upon which the plaintiffs must rely to sustain the charge of fraud are those of the principal defendants, John Dippold and Philip Fabel. These depositions were taken and read by the plaintiffs. It is true they were taken "as under cross-examination," pursuant to a statute of Pennsylvania, which declares that "a party to the record of any civil proceeding in law or equity, or a person for whose immediate benefit such proceeding is prosecuted or defended, may be examined as if under cross-examination, at the instance of the adverse party, or any of them, and for that purpose may be compelled, in the same manner, and subject to the same rules for examination as any other witness, to testify;

but the party calling for such examination shall not be concluded thereby, but may rebut it by counter-testimony." 1 Brightly's Purdon's Digest, 728. But that statute has no application to suits in equity in the courts of the United States. The act of Congress providing that the practice, pleadings, forms and modes of proceedings in civil causes in the courts of the United States shall conform, as near as may be, to the practice, pleadings, forms and modes of proceedings existing at the time in like causes in the courts of record of the State, expressly excepts equity and admiralty causes. 17 Stat. 197, c. 255, § 5; Rev. Stat. § 914. So that, when the plaintiffs used the depositions of Dippold and Fabel, taken "as under cross-examination," they made those parties their own witnesses. While the plaintiffs were not concluded by their evidence, and might show they were mistaken, it could not be properly contended by the plaintiffs that they were unworthy of credit. The evidence must be given such weight as under all the circumstances it is fairly entitled to receive. The case comes within the ruling in *Lammers* v. *Nissen*, (Sup. Ct. Rep. Lawyer's ed. Book 25, p. 562,) where the finding of the court of original jurisdiction, upon a mere question of fact, was affirmed by the Supreme Court of the State. Chief Justice Waite said: "Under such circumstances, we ought not to disturb the judgment of the state court unless the error is clear. No less stringent rule should be applied in cases of this kind than that which formerly governed in admiralty appeals, when two courts had found in the same way on a question of fact."

Without stating the evidence in detail, we content ourselves with saying that upon a careful review of all the circumstances disclosed by the record, we do not feel justified in disturbing the conclusion reached by the District and Circuit Courts upon mere questions of fact.

*Decree affirmed.*