### JACOBS v. VAN SICKLE et al.

#### (Circuit Court of Appeals, Third Circuit. December 24, 1903.)

#### No. 17.

1. BANKRUPTCY—FRAUDULENT CONVEYANCES—EVIDENCE TO IMPEACH

Evidence *held* insufficient to sustain a bill by the trustee of a bankrupt partnership to set aside a conveyance of property by one of the partners as void under Bankr. Act, § 67e, Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449] because made with intent to hinder, delay, and defraud creditors, where all fraud in the transaction was denied by the sworn answers and uncontradicted testimony of defendants, and where it further appeared that the defendant bankrupt was not insolvent aside from the partnership liabilities, and that he did not consider himself a member of the partnership, and was not such under the law as settled by decision in the state of his residence, but was so adjudged by the bankruptcy court after a contest.

2. EQUITY—ANSWER AS EVIDENCE.

Unless a bill expressly waives answer under oath, it must be so made, and, when responsive to the bill, is evidence for the defendant, to overcome which the testimony of two witnesses, or its equivalent, is required; and

the allegations of a bill charging fraud cannot be considered proved where they are specifically denied by answers under oath, and the only testimony introduced by complainant is that of defendants, who, as witnesses, support and amplify the averments of the answers.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 123 Fed. 340.

Moses Weinman, for appellant.

Frank Bergen, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge.   The complainant in this case, a resident of the state of New York, filed his bill of complaint in the Circuit Court of the United States for the District of New Jersey, as trustee in bankruptcy in the matter of Frederick Grant, Charles F. Grant and John K. Van Sickle, individually and as members of the firm of Grant Bros., bankrupts, against the defendants, all of whom were citizens of the state of New Jersey.

After alleging the adjudication in March, 1901, of the bankruptcy of Van Sickle, individually and as a member of the firm of Grant Bros., and the appointment in April, 1901, of the complainant as trustee, the bill goes on to allege that, under and by virtue of the will of Maria S. Van Sickle, John K. Van Sickle became seised and possessed of a certain house and lot in the city of Newark, of the fair and reasonable value of upwards of $40,000; that the said Van Sickle, in 1900, became largely indebted to various persons, both individually and as a member of the firm of Grant Bros., and became insolvent, and that "on or about the 1st day of August, 1900, he was liable to various creditors in an amount exceeding in the aggregate $300,000"; that "on or about the 10th day of August, 1900, the defendant, John K. Van Sickle, as devisee under the last will and testament of the aforesaid Maria S. Van Sickle, by an instrument in writing dated on that day, in which the defendant, Irene A. Van Sickle, the wife of the defendant John K. Van Sickle, joined, pretended to convey the premises hereinbefore described to the defendant George H. Kline, which conveyance was recorded in the office of the register of the county of Essex, state of New Jersey; * * * that said conveyance to the defendant George H. Kline, was made by the defendant John K. Van Sickle, as security for an alleged indebtedness of $40,000 and interest on said sum from June 8, 1900, being the amount of a certain promissory note alleged to have been made by the defendant, John K. Van Sickle, and which was alleged to have been due on said date."

The bill further alleges that said instrument in writing, referred to as "Exhibit B," "was made, executed and delivered by the defendants, John K. Van Sickle and Irene A. Van Sickle, his wife, to the defendant, George H. Kline, fraudulently, without any consideration, and with intent to hinder, delay and defraud his creditors, and in contemplation of insolvency, and with the further intention of creating a preference of an alleged indebtedness in favor of the defendant, George H. Kline; that said instrument was accepted, received and recorded by the defendant, George H. Kline, fraudulently, without the

payment of any consideration therefor, and with the knowledge on his part that the said John K. Van Sickle made said conveyance with the intent to hinder, delay and defraud his creditors"; and that after such conveyance, the remaining property of the defendant, John K. Van Sickle, was not sufficient to pay his debts, and the scheduled assets in bankruptcy were not worth, and would not realize, a sum exceeding one thousand dollars, which was wholly inadequate and insufficient to pay the claims of the creditors of the said bankrupt, and that "said creditors and the trustee herein have no adequate remedy at law to reach the real estate transferred as aforesaid."

The bill then alleges that the purported conveyance of the said real estate by the said Van Sickle to the said Kline, by reason of the matters thereinbefore set forth, is wholly void, and is of no force and effect whatever, the same having been made with the sole intent of hindering, delaying and defrauding the creditors of the said Van Sickle. The complainant, therefore, prays that the said transfer and conveyance be declared fraudulent and void; that the said Kline be enjoined and restrained from disposing thereof, and be decreed to convey and transfer the same to the complainant, as trustee in bankruptcy of the said John K. Van Sickle, bankrupt, and "to execute and deliver a discharge of the said instrument, appearing on its face to be a deed, but which is in reality a mortgage." The bill concludes by asking for a subpœna, directed to the defendants, and commanding them and each of them to appear and answer to the bill of complaint, without either demanding or waiving that said answer should be under oath.

The answer of the defendants admits the making of the will by Maria S. Van Sickle, her death, the probate of the will, the devise contained therein to John K. Van Sickle of the said house and lot, and that a true copy thereof is exhibited in the bill of complaint. But the defendants deny that Van Sickle ever entered into possession, save as executor of the said will, and alleges that the estate is still unsettled, and that three legacies mentioned in the will are still unpaid, and are charges upon said real estate, and that the expenses of litigation over the validity of said will, amounting to several thousand dollars, are chargeable thereto, making an incumbrance of about $10,-000. Defendants further answering deny that the said John K. Van Sickle became largely indebted to various persons, either individually or as a member of the firm of Grant Bros., or that he became insolvent, as alleged in said bill of complaint. The defendants then state in their answer, and in their testimony, as witnesses called on behalf of complainant, that for 19 years prior to the 1st of January, 1897, Van Sickle was employed as a clerk by the firm of Grant Bros., brokers, in the city of New York. In the year 1896, Van Sickle received a salary of $2,400, and in the month of December of that year, he entered into an agreement, whereby he became entitled to draw $3,000 a year from the firm and 10 per cent. of the profits; that in November, 1900, the firm made an assignment, and in the December following, a petition was filed in the District Court of the United States for the Southern District of New York, by creditors of the firm, for the purpose of having the firm and its members adjudged bankrupt, and on the

18th of March, 1901, they were so adjudged. In these bankruptcy proceedings, it was held that Van Sickle, by reason of the agreement made in December, 1896, had become legally a member of the firm, and consequently liable for its debts, aggregating several hundred thousand dollars, Van Sickle having contended that the legal meaning of the agreement did not make him a member of the firm.

After averring that the firm of Grant Bros. is indebted to Van Sickle in a large sum of money, for securities belonging to him and loaned said firm, as also for his 10 per cent. of the profits earned since January, 1897, and that a proper accounting will show that he is not indebted to said firm, or to any creditor of said firm, and that he was not indebted on his individual account to an extent that rendered him insolvent in the month of August, 1900, defendants admit in their answer the conveyance by Van Sickle and Irene A. Van Sickle, his wife, of the house and lot in Newark to George H. Kline, the other defendant, "to secure the payment of the sum of $40,000 and interest upon the same from the 8th day of June, 1900, being the amount of a certain promissory note given by John K. Van Sickle to said George H. Kline." "Defendants further answering say that during several years prior to the month of August, nineteen hundred, the said George H. Kline had loaned from time to time to said John K. Van Sickle various sums of money, so that on the 27th day of March, 1901, there became and was due from the said John K. Van Sickle to the said George H. Kline for said loans and interest thereon the sum of seventeen thousand five hundred and seventeen dollars and twenty-two cents, and that the promissory note referred to in said conveyance and the said conveyance were made, executed and delivered to the said George H. Kline to secure the amount of said loans and interest, and also upon the understanding and agreement between them that the difference between the amount of said note and the amount due from John K. Van Sickle to George H. Kline should be raised and used by the said John K. Van Sickle for the purpose of entering into business on his own account, but they were unable to procure a loan of such difference prior to the failure of the firm of Grant Bros., which occurred in November, nineteen hundred, and the subsequent proceedings in bankruptcy referred to in the bill of complaint."

The ninth paragraph of said answer is as follows:

"These defendants further answering deny that said instrument in writing annexed to the bill and marked 'Exhibit B' was made, executed and delivered by the defendants, or any of them, to George H. Kline fraudulently without any consideration and with intent to hinder, delay or defraud the creditors of the said John K. Van Sickle, or any of them, and in contemplation of insolvency and with the intention of creating a preference in favor of this defendant, George H. Kline, and they further deny that said instrument was accepted, received and recorded by the defendant, George H. Kline, fraudulently without the payment of any consideration therefor, and with the knowledge on his part that this defendant, John K. Van Sickle, made said conveyance with intent to hinder, delay or defraud his creditors, or any of them, and they further deny that after said conveyance and transfer the remaining property of the defendant, John K. Van Sickle, was insufficient to pay all his lawful debts."

Defendants deny that said Kline has practically no other property than that which he holds under said conveyance, and that creditors of

127 F.—5

the estate of Grant Bros., and of the individual members of said firm, will suffer great loss or damage unless Kline is enjoined as prayed for in the bill. They also "deny all manner of unlawful combinations and confederacy wherewith they are by said bill charged." The answer is sworn to in the usual form by all the defendants.

The complainant offered in evidence a copy of the will of Maria S. Van Sickle and of the deed, or agreement in the nature of a mortgage, in which Van Sickle conveyed the house and lot devised to him by Maria S. Van Sickle to George H. Kline. This deed states that the said Van Sickle is the executor of the testator, and that the devise to him and his conveyance to Kline are subject to the lien of certain legacies, amounting to upwards of $5,000, and also that the conveyance is subject to the payment out of the proceeds of sale of this land of all legal costs and expenses, counsel fees, allowances, etc., growing out of the litigation over the will of the said Maria S. Van Sickle, then pending in the prerogative court of New Jersey. There is then the following recital and stipulation:

"This conveyance is also made on the express understanding that the grantee is to recognize the legal rights of Franklin J. Wood, of Newark, N. J., who made a contract in writing for the purchase of these lands with said Maria S. Van Sickle in her lifetime and which contract the grantee hereby agrees to carry out when ordered to do so by said John K. Van Sickle, executor.

"It is hereby understood that the party of the second part holds this land as security and shall not mortgage or dispose of the same until all of the provisions of said will and the other matters above referred to are carried out and fulfilled."

The only witnesses called by complainant were the two defendants, John K. Van Sickle and George H. Kline, and one Franklin, a clerk in a bank, whose testimony was entirely immaterial. Both the defendants corroborated the statements of the answer, and a searching interrogation, in the nature of a cross-examination by complainant's counsel, failed to elicit anything which seemed to the court below essentially or necessarily contradictory thereto, or which supported to its satisfaction the allegations of fraud contained in the bill of complaint, so as to overcome the force and effect of the answer of defendants under oath denying such allegations. A careful examination of the record convinces us that the court was right in its conclusion.

As already stated, the only material witnesses called by the complainant were the defendants, Van Sickle and Kline, who, in addition to the general statements and denials of their answer, explained more at length the transactions between them, which resulted in the conveyance of August 10, 1900, and as to which the question, whether it was fraudulent and void against creditors, is the single question raised by the many assignments of error in this case. From this testimony, it appears that Van Sickle was a son-in-law of Kline, having married Kline's daughter in 1883; that as early as 1888 or 1889, Kline began to make advances of money to Van Sickle, the first advance being for the sum of $1,000; that it was the habit of Van Sickle and Kline at intervals to figure up the amount due from Van Sickle to Kline, whereupon the former would give a note for the amount ascertained; that between the times when the notes were given, memoranda of the

advances made were kept by both, and destroyed upon the making of a new note. The last note showing the amount due from Van Sickle to Kline was made on the 1st day of August, 1897, for the sum of $12,310.00. That note, and debts incurred by Van Sickle to Kline subsequent to its date, and interest thereon, constituted the actual debt of $17,517.22, which existed at the time when the conveyance was made. The note was produced at the hearing by Kline. He testified that it had been canceled, by tearing off the signature of Van Sickle, who left it at Kline's desk at the time when the note of $40,000, the nominal consideration for the conveyance in question, was given. There was an attempt by complainant's counsel to impeach the genuineness and bona fides of the note for $12,310, given in August, 1897, and for that purpose, Franklin, the only other witness besides the defendants, who was called by complainant, and who was a clerk in the bank where it was made payable, was asked whether the blank form upon which the note was written was one in use at the bank at the time the note bore date. He answered that it was. The testimony of the defendants themselves, as to the particulars of these various advances by Kline to his son-in-law, and the circumstances attending them, relied upon by complainant for this purpose, suffice at best to raise only a suspicion of falsehood, but fall far short of what is required in all judicial tribunals where fraud is sought to be proved. The explanation given by the two defendants, of the transaction by which a note for $40,000 was given in April, when only $17,517.22 was actually due, and the conveyance of the house and lot in August to secure the same, is that Van Sickle, during the spring and summer of 1900, was desirous of leaving the firm of Grant Bros. and wished to raise money with which to start in business for himself. The testimony of both Kline and Van Sickle is to the effect that it was thought by both of them, first, that the note for $40,000 might be used by Kline to both secure Van Sickle's indebtedness to him, and also to raise $20,000 or thereabouts, to be handed over to Van Sickle for the purpose above indicated, and that to increase the chances of accomplishing this purpose, the deed of August 10, 1900, was made. It certainly seems now to have been an oversanguine expectation on their part, that this purpose could have been accomplished upon the basis of a title so imperfect and restricted as that conveyed to Kline by Van Sickle, but, in the light of this testimony, we cannot concede that this deed on its face is a fraud on creditors, apart from any other evidence (of which there is an entire failure) showing such intent. Both defendants, in their answer and testimony, absolutely deny any such intent, declare positively that Van Sickle had no individual creditors that he was not able to pay in full; moreover, that he honestly rested in the belief that he was not legally a member of the firm of Grant Bros., and so not responsible for partnership debts, because under the law of the state of New Jersey, as laid down by its Supreme Court, he was not, under the facts recited, such partner, and that as Kline was an individual creditor of Van Sickle, he was entitled to payment in full in preference to partnership creditors, even should Van Sickle be a partner of the firm of Grant Bros. There is no testimony to contradict that of these two witnesses called by the complainant

himself, or to show any intention on the part of Van Sickle to deprive his creditors of what might be realized out of the real estate conveyed, over and above the debt due to Kline. There is no proof that Van Sickle, apart from partnership liability, was individually insolvent, and no presumption, therefore, that the deed in question was intended to delay, hinder, or defraud creditors. Van Sickle's disavowal of any fraudulent intent or design, is supported by the fact that, in the schedule of debts furnished by him in the bankruptcy proceedings, he has stated the debt due Kline to be $17,517.22, an amount not successfully disputed as being justly due.

It was further contended that if, aside from the provisions of the bankruptcy act, the deed was not void as an attempt to hinder, delay and defraud the creditors of the grantor, its delivery was an unlawful attempt by a bankrupt to create a preference, it having been made within four months before the filing of the petition by an insolvent debtor to a creditor who had reasonable cause to believe that the debtor was insolvent, and is therefore void under section 67c of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]). Regarding this conveyance to Kline as a mortgage, and not an out and out conveyance, still, from what we have already said of the facts as disclosed by the record, it is apparent, that no sufficient evidence has been offered by complainant that Kline, as grantee under the deed, had reasonable cause to believe that Van Sickle was insolvent and in contemplation of bankruptcy, to overcome the denial of such belief contained in the answer and testimony of both defendants.

But it is further contended that the said deed is void under section 67e of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), which makes void, as against creditors, all conveyances for property by a person adjudged a bankrupt, within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors. We have already shown that there is no evidence of such intent or purpose adduced by complainant sufficient to overcome the answer and testimony of the defendants. The complainant, after assuming the intent and purpose of Van Sickle to "hinder, delay or defraud his creditors," contends that under this paragraph of section 67, neither the insolvency of the grantor nor knowledge on the part of the grantee, of the fraudulent purpose, is requisite. But even with this assumption, the language of section 67e does not support complainant's contention. It is as follows:

"That all conveyances * * * by a person adjudged a bankrupt * * * within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, * * * shall be null and void as against the creditors of such debtor, *except as to purchasers in good faith and for a present fair consideration.*"

The words we have italicized, we think negative the contention of complainant, that the conveyances described in this paragraph of section 67 are made void, irrespective of knowledge and participation in the alleged fraud by the grantee. But, as we have already said, no intent to hinder or delay having been shown by the grantor, discus-

sion of the question whether knowledge on the part of the grantee is required, in order to vacate the conveyance, is unnecessary.

But we must not allow to pass without further comment, the fact that the only witnesses called by complainant, to support the allegations of his bill, were the two defendants, Van Sickle and Kline, whose answer under oath was supported and amplified by their testimony. As already noted, the bill neither demands nor waives an answer under oath, so that "the answers of the defendants being directly responsive to the bill are evidence in their behalf." Dravo v. Fabel, 132 U. S. 489, 10 Sup. Ct. 171, 33 L. Ed. 421; 41 Eq. Rule, as amended.

In Conly v. Nailor, 118 U. S. 127, 6 Sup. Ct. 1001, 30 L. Ed. 112, a bill in equity had been filed to set aside deeds made by appellee to appellant. The bill alleged three grounds for setting aside the bill: (1) That the grantor was "demented and insane" and incapable of making the deeds; (2) the immorality of the consideration for said deeds; (3) that the deeds had been procured by fraud and undue influence of defendant over the grantor. The court say:

"The bill neither required nor waived an answer under oath, but the defendant answered under oath, traversing all the averments of the bill, upon which the prayer for relief was based. * * * The answer, though not called for under oath, is evidence on behalf of the defendant. For, if a plaintiff in equity is unwilling that the answer should be evidence against him, he must expressly waive the oath of the defendant in his bill. See amendment to 41 Equity Rule. If he fail to do this, the answer must be given under oath and is evidence. This branch, therefore, of the plaintiff's case breaks down, because all the testimony in the record upon the question of consideration is against the averment of the bill."

In Monroe Cattle Co. v. Becker, 147 U. S. 47, 13 Sup. Ct. 217, 37 L. Ed. 72, there was a bill in equity filed in the court below for the cancellation and annulment of certain patents for school lands, issued to the defendant, Becker, on the ground of illegality and fraud charged against one Rhomberg, who made application for the purchase of these lands for and in the name of the defendant. In the course of its opinion, delivered by Mr. Justice Brown, the court says: "An answer under oath being required, the defendant denied the fraudulent purposes and designs charged against Rhomberg in the bill, and, in his testimony, Rhomberg swore" to certain things tending to exonerate him from the charge of fraud. "In short, that the applications were made bona fide for the benefit of the applicants, and that he had no personal interest in any of them. As there was no testimony contradictory to this, Rhomberg being the only witness examined on this subject, the charges of fraud must be regarded as not sustained if, indeed, the answer be not sufficient for that purpose without other testimony." The ordinary and well-settled rule of equity pleading and practice is that, where a bill of complaint fails to waive an answer under oath, and the defendant answering under oath denies positively and in direct terms the averments of the bill on which the equity of complainant's case rests and the prayers for relief are founded, the answer can be overcome only by the testimony of at least two witnesses or of one witness with corroborating circumstances. While there may be exceptions to the literal requirements of this rule, the present case is not within them. Not only has the sworn answer of the defendants de-

nied the allegations and charges which constitute the gravamen of the bill, but the testimony of the defendants, when called as witnesses by the complainant, has emphasized this denial and presented explanations of facts and conduct which must be accepted by complainant as true; and so considered, they are exculpatory of the charges of fraud made by complainant in his bill. The rule that a party cannot impeach the testimony of his own witnesses, is of general application, and rests upon fundamental requirements in the orderly administration of justice. This rule, too, has well defined exceptions and modifications, none of which apply to the case in hand. That the witness is the opposite party in the suit, to the party calling him, is no exception to this rule, and no reason is presented in this case why the estoppel of the rule should not be imposed upon the complainant below.

In Dravo v. Fabel, supra, the Supreme Court, directly after the passages quoted in regard to the effect to be given to the answers of the defendants, say:

"Besides, the depositions upon which the plaintiffs must rely to sustain the charge of fraud are those of the principal defendants, John Dippold and Philip Fabel. These depositions were taken and read by the plaintiffs. It is true they were taken 'as under cross-examination,' pursuant to a statute of Pennsylvania, which declares that 'a party to the record of any civil proceeding in law or equity, or a person for whose immediate benefit such proceeding is prosecuted or defended, may be examined as if under cross-examination, at the instance of the adverse party, or any of them, and for that purpose may be compelled, in the same manner, and subject to the same rules for examination as any other witness, to testify; but the party calling for such examination shall not be concluded thereby, but may rebut it by counter-testimony.' 1 Brightly's Purdon's Digest, 728. But that statute has no application to suits in equity in the courts of the United States. The act of Congress providing that the practice, pleadings, forms and modes of proceedings in civil causes in the courts of the United States shall conform, as near as may be, to the practice, pleadings, forms and modes of proceedings existing at the time in like causes in the courts of record of the state, expressly excepts equity and admiralty causes. Act June 1, 1872, 17 Stat. 197, c. 255, § 5; Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]. So that, when the plaintiffs used the depositions of Dippold and Fabel, taken 'as under cross-examination,' they made those parties their own witnesses. While the plaintiffs were not concluded by their evidence, and might show they were mistaken, it could not be properly contended by the plaintiffs that they were unworthy of credit."

The court below has said:

"There is nothing in the evidence which justifies the court in finding that the transaction" (between Van Sickle and Kline) "was fraudulent. 'Fraud is not to be lightly imputed. The law never presumes it. It devolves on him who alleges fraud to show the same by satisfactory proof."

After a careful review of all the circumstances disclosed by the record, we do not feel justified in disturbing the conclusion reached by the court below, and its decree is affirmed.