### In re TOLEDO PORTLAND CEMENT CO.

(District Court, E. D. Michigan, S. D.   March 8, 1907.)

#### No. 1,127.

1. BANKRUPTCY—CORPORATIONS SUBJECT TO ADJUDICATION—"ENGAGED IN MANUFACTURING."

In the phrase "engaged in manufacturing," as used in Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], the word "engaged" means occupied, employed, busy, and the word "manufacturing" means the making of an article, either by hand or machinery, into a new form capable of being used in ordinary life, or the fashioning of raw materials into a change of form for use; and a corporation which, although authorized to manufacture an article of commerce, has not the means for such manufacture, and has taken no step in the process of manufacturing, is not engaged in any proper sense in the manufacturing of such article, and is not subject to adjudication as an involuntary bankrupt under said section.

[Ed. Note.—What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

2. SAME.

A corporation incorporated for the sole purpose of making and selling cement, which has not completed its buildings nor its railroad from them to the marl beds from which it was to obtain its materials, nor in fact acquired all of the right of way therefor, and which has taken no step in the process of manufacture, is not subject to involuntary proceedings in bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], as a corporation engaged in manufacturing.

In Bankruptcy.   On exceptions to findings of referee.

H. E. Bodman, George D. Welles, H. A. Conlin, and King & Tracy, for petitioners.

A. F. & F. M. Freeman and A. J. Waters, for respondent.

SWAN, District Judge. An involuntary petition was filed in the above-entitled cause against respondent, a Michigan corporation, praying that an adjudication of bankruptcy be entered against it for the matters charged in the petition. The referee has returned his findings of fact and law, which need not be here repeated at length. The referee held, upon the authority of In re White Mountain Paper Company, 127 Fed. 180, 11 Am. Bankr. Rep. 491, and White Mountain Paper Co. v. Morse, 11 Am. Bankr. Rep. 633, 127 Fed. 643, 62 C. C. A. 369, that the respondent was engaged in manufacturing, and therefore amenable to the bankrupt act.

Upon the facts found by him and recited in his report I cannot agree with his conclusion of law that the corporation came within the provisions of Bankr. Act July 1, 1898, c. 541, § 4, subd. "b," 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]. The opinion in the case first cited, notably that in the Circuit Court of Appeals in the Second Circuit, is by Judge Putnam, and is expressly predicated upon the facts of that case, in which the corporation proceeded against had taken the first step in the business of manufacturing and was proceeding in that business with a view to the ulterior steps necessary to complete the product which it was its purpose to manufacture; in other words, it had stepped into the domain of manufacturing. In this case the referee finds expressly that the buildings are uncompleted, right of way was not all obtained, no manufacturing has ever been done, the railroad was never completed from the factory to the marl beds, and, in fact, a portion of the right of way was never acquired. The case at bar differs widely in its facts from that upon which the referee relied. In the latter case the company's defense to the petition for bankruptcy was that, inasmuch as it had not commenced in its mill the production of either pulp or paper or any other article named in its charter, it was not, at the time the petition was filed against it, engaged at all in manufacturing. This proposition was overruled by the court, which found that the getting out of the required lengths of lumber for use in the manufacture of pulp, with a design to manufacturing them, was manufacturing, though in its earlier stage. The court, protesting that this proposition "was a narrow aspect, to which we are not limited," says:

"The question is a question purely of fact, * * * so that we are bound to hold that on any fair construction of the statute, and in every application of the facts as applied thereto, the corporation was not principally, but wholly, engaged in manufacturing, although in the earlier stages of it. * * * We may well further state that the circumstances of the proceeding before us, as applied to the statute we are considering, are so very peculiar that no precedent cited fits properly into it, or can be expected to do so. The view we take of this proceeding resolves it mainly into questions of fact. * * *"

This question of fact is not in this case, and is negatived expressly by the referee in his finding of fact. The respondent here was incorporated to make and sell but one product—cement. The power to manufacture implies of necessity the power to sell, or there would be

no object for incorporating it for the production of cement. Upon this record it is clear that it was not engaged in mercantile pursuits, for it never produced cement, nor ever sold any. While it was organized to make and sell that product, it had never become industrially or commercially active. Financial embarrassment arrested the progress of the works necessary to enable it to exercise its corporate franchise for the manufacture and sale of cement, and the enterprise has ever since remained dormant. Nearly two years after respondent came into this condition this petition in bankruptcy was filed, which alleges that the respondent is engaged in manufacturing pursuits. The truth of this allegation is the hinge of jurisdiction of the court of bankruptcy. Can it be said, upon these facts, which are not controverted, that respondent is within the letter or spirit of the bankrupt act?

As held in United States Hotel Company v. Niles, 134 Fed. 225, 67 C. C. A. 153, 68 L. R. A. 588, 13 Am. Bankr. Rep. 403, and In re Surety, Guaranty & Trust Company, 121 Fed. 73, 56 C. C. A. 654, 9 Am. Bankr. Rep. 129, the present bankruptcy act is more restrictive than that of 1867, which applied to all moneyed interests or commercial corporations. The language of the present act descriptive of the corporations amenable to involuntary proceedings is specific. It means that the corporation's business must not only be that of one or more of the classes designated, but it must be "engaged in" such business, or, if carrying on more than one business, it must be "principally engaged" in one at least of the commercial or industrial pursuits designated in section 4b. Can a corporation having the authority, but not the means, to manufacture an article of commerce, which has taken no step in the process of manufacturing, be properly said to be engaged in "manufacturing" that article? "Engaged" means, in that connection:

"Occupied, employed, busy. * * *" Webster.

"(1) To busy oneself; (2) to be occupied or devoted; (3) to take part, as to engage in trade; (4) employ the time of. * * *" Standard Dictionary.

See State ex rel. Dawson, 39 Ala. 383; In re Ralph's Trade-Mark, 25 Ch. Div. 194.

A corporation in that stage of its existence cannot be truthfully said to have a manufacturing business, pursuit, or employment. The erection of buildings necessary to the exercise of its authorized powers is neither a manufacturing, trading, printing, publishing, mining, or mercantile pursuit. "In the more modern idea attached to the word [manufacture], it is making an article either by hand or machinery into a new form, capable of being used and designed to be used in ordinary life." Lawrence v. Allen, 7 How. 794, 12 L. Ed. 914. In Kidd v. Pearson, 128 U. S. 20, 9 Sup. Ct. 10, 32 L. Ed. 346, it is said:

"Manufacture is transformation; the fashioning of raw materials into a change of form for use."

The internal revenue law abounds with provisions fixing the tax to be paid by those who carry on business as dealers of liquor, tobacco, cigars, or manufacture and deal in oleomargarine and other commodities, and imposing penalties for nonpayment of the tax. The language of these statutes defining the persons taxable is equivalent to that here under discussion, and the taxes and penalties for their nonpayment are

predicated expressly on activity in the particular industry, manufacture, or business upon which the tax is imposed.

The argument for petitioners is practically that the word "engaged" is used as a synonyn for organized or incorporated. This ignores the rules of statutory construction. The ordinary and natural meaning of words in a statute is to be adopted, unless the context indicates or it otherwise appears that they are to have a technical meaning, or that another construction is required to avoid injustice or absurdity. The cardinal rule of interpretation is that, when the language of the statute is clear, it is not open to construction, and that effect must be given to every word of the statute if it can be done without violating the intention of the Legislature. Market Company v. Hoffman, 101 U. S. 115–119, 25 L. Ed. 782.

In Columbia Iron Works v. National Lead Co., 127 Fed. 99, 62 C. C. A. 99, 64 L. R. A. 645, respondent denied that it was a corporation engaged principally in manufacturing. Discussing this contention, Judge Severens said (page 101 of 127 Fed., 62 C. C. A. 99, 64 L. R. A. 645):

"No doubt the question is to be determined upon the consideration of what the corporation actually does, rather than what it is authorized by its charter to do."

In United States Hotel Company v. Niles, 134 Fed. 228, 67 C. C. A. 153, 68 L. R. A. 588, Judge Lurton says:

"The Congress has not seen fit to define the occupations which are meant to be included under the description of corporations 'engaged principally in trading.' That its principal business shall be trading is required; for if trading be a minor object, wholly incidental to some greater purpose, it is not then embraced among the corporations subject to the law."

As it is undisputed that the respondent never made or sold a pound of cement, how can it be said to be or to have been at any time subject to be proceeded against in bankruptcy?

In Re New York & W. Water Company (D. C.) 98 Fed. 711–714, District Judge Brown said:

"No doubt the powers of a corporation are to be determined by its charter and by the statutes applicable to it. The amendment of the charter of this corporation authorized it to buy, sell, use, and deal in water for power, manufacturing, and hydraulic purposes. As above stated, however, the evidence is that it did not furnish water for these purposes; and under the bankrupt act the question is, not how extensive the company's powers may be, but in what pursuits the corporation is in fact principally engaged, and whether these pursuits are principally trading or mercantile."

With like reason it may be well said that a company may be organized for manufacturing and selling certain products, but neither its organization nor powers make it subject to proceedings in bankruptcy unless it can be truly said, under the construction of this statute, that the word "engaged" has no significance whatever, but that the decisive fact in determining the liability of such a corporation to involuntary bankruptcy is the purpose for which it was incorporated. If the business in which it was proposed to engage in was authorized by its charter, it would follow from this reasoning that any of the corporations designated as amenable to bankruptcy proceedings might be proceed-

ed against upon its organization, and is engaged in manufacturing business when it purchases land preparatory to the construction of its works. It seems clear that if Congress meant to make corporations incorporated for the conduct of any of the lines of business mentioned in section 4 of the act subject to adjudication as involuntary bankrupts, before they began the business for which they were created, the most natural expression of that intent would have been the phrase "incorporated for," or "organized for manufacturing or mercantile pursuits." Either would have demonstrated an unmistakable purpose to bring them within the scope of the act immediately upon incorporation or organization. It is said in Murphy v. Utter, 186 U. S. 111, 22 Sup. Ct. 782, 46 L. Ed. 1070:

"Every word or clause used in a statute is presumed to have a meaning of its own independent of other clauses. * * *"

If the contention of the petitioners can be maintained under the first clause of section 4, one who has bought or leased a farm with the ulterior purpose of farming, but who is not engaged either personally or by his employés in that vocation, is a person "engaged" chiefly in farming or tillage of the soil. The contrary is held in Re Matson (D. C.) 123 Fed. 743.

In Tiffany v. La Plume Condensed Milk Co. (D. C.) 141 Fed. 448, Judge Archbald held that:

"The liability of a person, whether natural or artificial, to bankruptcy, is to be judged by the character of the pursuit in which such person was engaged at the time the debts due the petitioning creditors were incurred, with respect to which it may be conceded that as to a corporation its actual business is to be considered, and not that which it might have possibly undertaken by virtue of any authorized power."

It is evident that a contrary construction would subject a corporation of either of the classes mentioned in section 4 to bankruptcy proceedings, although it had not yet commenced the building of its plant, but had borrowed money for that purpose.

In Warren v. Shook, 91 U. S., 711, 23 L. Ed. 421, the court, construing section 90 of the internal revenue act of 1864, as amended (13 Stat. 252, c. 173), which imposed a tax on "all brokers and bankers doing business as brokers," held that it was intended to compass the entire class of persons engaged in the business of buying and selling stocks and coin and (top page 711 of 91 U. S. [23 L. Ed. 421]):

"It is only when making sales and purchases in his business, his trade, his profession, his means of getting his living or of making his fortune, that he becomes a broker within the meaning of the statute."

By a parity of reasoning it would seem that until a corporation of the classes described has become a factor in the activities of the commercial or industrial world for the purpose of its organization, it is not engaged in manufacturing, trading, or other pursuits. For these reasons I am constrained to overrule the finding of fact and law of the referee which sustains the jurisdiction of the court of bankruptcy over the respondent in this case.

The finding of the referee (17 Am. Bankr. Rep. 375) is reversed, and the petition is dismissed, with costs against petitioners.