**MILLER v. CONSOLIDATED ROYALTY OIL CO. et al.***

**SAME v. RICHARDSON et al.**

Circuit Court of Appeals, Eighth Circuit.
November 23, 1927.

Nos. 7845, 7846.

**I. Mines and minerals ⊜⇒34—Purchaser of placer mining locators' interest from heirs held to have no interest in oil lease given to another purchaser from locators in possession since 1888 (Leasing Act Feb. 25, 1920, §§ 18, 37 [30 USCA §§ 193, 227]).**

Plaintiff, purchaser of interests of locators of placer mining claims under the placer mining

*Rehearing denied February 10, 1928.

law, before enactment of Leasing Act Feb. 25, 1920 (Comp. St. § 4640¼ et seq.), from locators' heirs or their grantees, *held* to have no interest in lease under such act, given to another purchaser from locators who went into possession in 1888, and thereafter for 30 years had open, exclusive, continuous, and adverse possession until he sold to defendant, in absence of proof that those under whom plaintiff claimed, after 1888, did any of the required assessment work on claims, or asserted any right or interest therein, under sections 18, 37 (30 USCA §§ 193, 227).

**2. Equity ⊜⇒57—Purchaser of placer mining locators' interests, in possession, held entitled to deed, and rights as if deed had been executed, as against other claimants having notice.**

Purchaser of interests of locators of placer mining claims under placer mining law before enactment of Leasing Act Feb. 25, 1920 (Comp. St. § 4640¼), who paid agreed consideration, received powers of attorney for execution of deed, and went into immediate possession, was entitled to deed, and equity court will regard the case between purchaser and those claiming under original locators with notice as though deed had been made.

**3. Mines and minerals ⊜⇒29(1)—Title to mining claims in public domain remained in government until patent, and locator's interest is merely possessory right.**

Title to mining claims located on the public domain remains in the United States until patent, and locator's interest is only a possessory right, though it may be indefinitely continued by strict compliance with the mining law.

**4. Mines and minerals ⊜⇒38(5)—Suit to establish interest in oil lease under locators of placer mining claims held barred by laches of locators and their heirs, who asserted no claims since 1888.**

Suit to establish interest in oil lease given under Leasing Act Feb. 25, 1920 (Comp. St. § 4640¼ et seq.), *held* barred by laches, where no claim was asserted in lease, or in property before execution of lease, as successor of locators of placer mining claims under placer mining law since 1888, plaintiff, as purchaser from locators' heirs or their grantees, being chargeable with knowledge of laches of locators and their heirs.

**5. Property ⊜⇒10—Possession of realty gives notice of possessor's claims.**

Possession of real estate gives notice of possessor's claims thereto.

**6. Witnesses ⊜⇒178(1)—Litigant cannot call hostile witness, and then prevent him testifying to adverse statement, on ground of his incompetency.**

A litigant cannot call an adverse or hostile witness, and have him testify so long as his testimony is favorable, and then prevent him from making an adverse statement on the ground of his incompetency under the state statute.

**7. Courts ⊜⇒335(1)—Local statute, authorizing calling of hostile witness for cross-examination, is inapplicable in equity suit.**

State statute, permitting calling of hostile witness for cross-examination, has no application in an equity suit.

Appeals from the District Court of the United States for the District of Wyoming; Colin Neblett, Judge. .

Separate suits by Henry A. Miller against the Consolidated Royalty Oil Company and others and against Emile Richardson and others, which were consolidated for final hearing. Bills dismissed, and plaintiff appeals. Affirmed.

John T. Bottom, of Denver, Colo., for appellant.

John W. Lacey, of Cheyenne, Wyo. (Roderick N. Matson, Herbert V. Lacey, D. J. Howell, and Clarence A. Swainson, all of Cheyenne, Wyo., on the brief), for appellees.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. These suits were consolidated for final hearing. They present in substance the same controversy. The bill in each case was dismissed and plaintiff has appealed. He claims that he is the owner by purchase of an undivided one-eighth interest in certain oil-bearing lands in the Salt Creek Field, Wyoming, that some of the defendants, without the knowledge or consent of his grantors, obtained leases on said lands from the United States under the Act of February 25, 1920 (41 Stat. 437 [Comp. St. § 4640¼ et seq.]), and are now producing and for several years have been producing oil in large quantities, and are paying to other defendants a royalty thereon under a contract made by the defendant Emile Richardson with said lessees, that said Richardson and appellant's grantors were co-owners of the lands when he made said contract, that said Richardson or he and some of the other defendants have received and continue to receive all the royalties so reserved, to the exclusion of appellant's grantors and of him since he purchased his interest in the lands; and he asks for an accounting of the royalties received, that he be adjudged entitled to one-eighth thereof and to one-eighth of the royalties that may accrue hereafter under said contract made by Richardson.

The lands in question, 13 quarter sections, are all within what is known as Petroleum Reserve No. 9, but before the President withdrew them from entry and sale they were located as placer mining claims, each comprising 160 acres. Each claim was located and filed upon by eight qualified entrymen or locators under the placer mining law. They were made, some in 1887 and the others in 1888, and appellant's claimed title to one-eighth interest in each claim rests on conveyances which he obtained mediately or immediately from heirs of deceased locators.

The rights of locators or their successors in interest were recognized by the Leasing Act, supra, and they were given preference as applicants for leases, provided they or their successors in interest would surrender and release any claim to title to the lands, and provided, further, they had complied with the placer mining law. Section 18 of said Act (30 USCA § 227). Some of the defendant lessee corporations or their assignors made applications for leases of these lands. Emile Richardson also made applications, and the contract which he made reserving to himself the royalties in which appellant claims a right to share, was in consideration of his agreeing to withdraw his applications and defend the right and title on which his applications were based in event that title should be set up in any way against the successful lessee. The leases were granted to the parties thus contracting with Richardson, and they have paid to him or to him and his assigns royalties as agreed on the oil produced. The placer claims were all in the status contemplated by the Leasing Act, supra, and the inquiry of the Secretary of the Interior in passing on applications was to ascertain whether the applicant or applicants was or were then the owner or owners of the placer locations. If it was found that he was, his release of all claim of title was taken and the lease granted. Appellant says that his grantors, who he contends held one-eighth interest in these locations when the lands were leased, knew nothing about applications being made for leases, and the procedure taken thereon, until long after the leases were granted.

The answers deny that appellant or his grantors had any interest in any of the placer claims, and allege that they all belonged to Richardson at the time he applied for leases, he having acquired them from Iver Johnson, who purchased from the original locators in 1888, and that Johnson took immediate possession, did all the assessment work thereafter at his own expense and held them openly, continuously and adversely for more than thirty years thereafter.

[1] In one suit appellant's claimed interest in some of the claims is set forth in this way: In 1887 and 1888 one Peter Milan was one of the eight locators of those claims, his name appearing as such on the location certificates. He died in October, 1894. In September, 1921, his heirs conveyed all their in-

terest to Rogers and Goff, and in January, 1922, Rogers and Goff conveyed to appellant. In the other suit appellant's claimed interest in some of the other claims is set forth in this way: Charles Linn was one of the eight locators and his name appeared as such on the location certificates. Charles Linn died in April, 1902, and in February, 1922, his heirs conveyed their interest to appellant. James McFarlin (or McFarland) was one of the locators of some of these claims, his name appearing as such on three of the location certificates. Sam McFarlin, claiming to be his sole heir, conveyed to Rogers and Goff in September, 1921, and they conveyed to appellant in January, 1922.

This was the case made by appellant in each suit. He rested on his paper title without any proof that Milan, Linn and McFarlin, or any of them, or any of the heirs of either, were ever in possession of any of the claims after November or December, 1888, or that they, or any of them, after that date did any of the required annual assessment work on any of the claims, or caused it to be done, nor did appellant adduce proof tending to show that any of his claimed predecessors in interest asserted after said date any interest in or right or title to any of said claims until after the leases were made, the claims developed at large expenditure and thus demonstrated to be of great value. Appellant says in each complaint that he ratifies the contract made by Richardson reserving royalties, claiming that reservation inured to the benefit of his grantors and to him as grantee. But it seems to us that the right which he asserts is dependent on a right in his grantors to a lease under the Leasing Act, else there would be nothing to support an interest in or right of his grantors to the reserved royalties. It seems plain under the requirements of sections 18 and 37 of the Act (30 USCA §§ 193, 227) that Milan, Linn and McFarlin, or their successors in interest, had no right to a lease without showing that they had continuously complied with the requirements of the placer mining law, and in this, as we have said, the proof wholly failed. Not only so, but it was abundantly established by the evidence in behalf of appellees that Richardson's grantor, Iver Johnson, purchased from Milan, Linn and McFarlin in the year 1888, all of their interest in all of these placer claims, paid to each of them a valuable consideration at the time the purchases were made and that Johnson, having also bought out all other locators at once took possession of all the claims, and thence for thirty years held

open, exclusive, continuous and adverse possession of them until he sold to Richardson, before the leases were obtained. The proof is that after Johnson purchased neither Milan, Linn nor McFarlin, or their heirs, ever claimed any interest in any of the claims, or disputed Johnson's right and title under his purchase, never went upon the claims, never contributed anything in keeping up the annual assessment work, and that Johnson did all of the annual assessment work beginning with the year 1888 at his sole expense, to a total outlay of more than $65,000. The proof that Johnson was never a co-locator, co-owner or co-tenant with Milan, Linn or McFarlin is not disputed, except, perhaps, as to one claim only, and even this is denied by Johnson. He testified that he never made but one location and that was on a different quarter section from any here involved. On these facts we are unable to see by what right appellant or his grantors could have any interest in a lease given under the Leasing Act. [2, 3] Johnson's record title and that of Richardson, who purchased from him on a proved consideration of $53,000, is disputed; indeed, it is contended he has no record title, and it must be conceded that question is in doubt. He claimed a record title but the documents relied on for that purpose are hardly sufficient in and of themselves to sustain the claim. There are two of them, each denominated power of attorney, executed to Johnson by Milan, Linn and other locators of claims. In addition to appropriate verbiage for that purpose, they contain clauses which might be construed as appropriate to conveyance of the titles to Johnson. In addition to that, there was uncontradicted testimony that when Johnson purchased the interests of Milan and Linn in all of the claims and paid them the agreed consideration, Johnson sent Milan and Linn to the attorney who drew the powers of attorney for the purpose of having him prepare the deed of conveyance to be executed by Milan and Linn, and Milan and Linn, after returning from an interview with the attorney, advised Johnson that an additional instrument of conveyance was not necessary, that in the opinion of the attorney the so-called powers of attorney operated as conveyances from them to Johnson. The matter was then dropped. Johnson took immediate possession, and under the facts that have been stated fully performed the contract on his part. He was clearly entitled to a deed, and a court of equity must regard the case between them and those claiming under Milan and Linn with notice as though the deed had been

made. Riggles v. Erney, 154 U. S. 244, 254, 14 S. Ct. 1083, 38 L. Ed. 976; Peoples Pure Ice Co. v. Trumbull (C. C. A.) 70 F. 166. Moreover, the title to mining claims located on the public domain remains in the United States until patent. The locator's interest is only a possessory right, though it may be indefinitely continued by strict compliance with the mining law. It has been held that a written conveyance is not necessary to transfer this possessory right. Union Consol. Silver Mining Co. v. Taylor, 100 U. S. 37, 42, 25 L. Ed. 541.

[4, 5] Again, appellant's grantors by their own laches were precluded and estopped under the facts presented in these cases. Taylor v. Salt Creek Con. Oil Co. (C. C. A.) 285 F. 532. And appellant on this record must be charged with knowledge of the laches of Milan, Linn, McFarlin and their heirs. He either knew the facts or was bound under the circumstances to make inquiry which, if reasonably pursued, would have revealed the facts. The possession of real estate gives notice of the claims of the possessor thereto.

As has already been said, the evidence refutes the allegations of the bills that Johnson was co-tenant of Milan, Linn and McFarlin. In Hodgson v. Federal Oil & Development Co. (C. C. A.) 5 F.(2d) 442, we rejected the contention on the facts of that case, that a co-tenant who had obtained a lease under the Leasing Act could be held as trustee. On appeal from this court it was affirmed. See 274 U. S. 15, 47 S. Ct. 502, 71 L. Ed. 901.

[6, 7] It is complained that the court erred in admitting testimony of Iver Johnson as to his conversation with Milan and Linn when he purchased the placer claims, they being dead. We cannot ignore the fact that appellant wholly failed to comply with rule 24 of this court in not setting out in his brief the substance of the evidence that was erroneously admitted. The page in the record on which that evidence might be found was not even noted in the brief, nor do the assignments of error furnish us with the information required by the rules. But passing that omission, we think it is sufficient to say, if all of the testimony of Johnson be eliminated from consideration it would not change our conclusions. Barring his testimony as to conversations with Milan and Linn, what he said in other respects is fully affirmed by the testimony of other witnesses. Besides, appellant called Johnson as his witness and interrogated him at some length. He testified about the other locators selling the claims and all their interests in them to him,

about his selling them to Emile Richardson, as to when he last saw Peter Milan and Charles Linn and about his doing the assessment work on the claims. He further testified on direct examination that he had no interest in the royalties that were being paid and for which the appellant brought his suit, that he had no claim or demand of any kind or character in reference to those royalties. Counsel for appellant announced when he called Johnson as a witness that he did so for cross-examination under the State statute, but that statute has no application in an equity suit. Dravo v. Fabel, 132 U. S. 487, 10 S. Ct. 170, 33 L. Ed. 421. Conceding that Johnson was an incompetent witness under the State statute, we think a litigant cannot be permitted to open the mouth of his adversary so long as he speaks favorably and then close it to an adverse statement. The brief of appellees cite and quote from numerous authorities in denial of such a practice.

We think the trial court did not err in dismissing the bills, and the decrees are

Affirmed.