WARREN ET AL. *v.* SHOOK.

1. The substance of the business of a banker, as defined by the acts of Congress approved June 30, 1864 (13 Stat. 252), and March 3, 1865 (id. 472), is having a place of business where deposits are received and paid out on checks, and where money is loaned upon security.

2. By the same acts, a broker is defined to be one whose business it is to negotiate purchases or sales of stocks, exchange, bullion, coined money, banknotes, promissory notes, or other securities, for himself or for others.

3. The words " whose business it is," employed in the ninth subdivision of the seventy-ninth section of the act of 1864, qualify all parts of the definition of a broker as given in the act; so that a person becomes a broker, within the meaning of the statute, only when making sales and purchases is his business, trade, profession, means of getting his living, or making his fortune.

4. While the sale by a person doing a banking business only of a security received by him for the repayment of a legitimate loan does not make him a broker, and subject him to taxation as such, yet, when it is his business, the statute properly holds all such acts, whether in the name of himself ostensibly or in the name of others, to be those of a broker.

5. Congress, by enacting " that all brokers, and bankers doing business as brokers, shall be subject " to the duties specified, plainly intended to include the entire class of persons engaged in the business of buying and selling stocks and coin.

ERROR to the Circuit Court of the United States for the Southern District of New York.

This case was tried upon the following agreed statement of facts : —

*First*, " That the plaintiffs, from the first day of April, 1865, to the first day of May, 1866, were copartners in the city of New York, doing business under the firm name of ' John Warren & Son.' "

*Second*, That, during such time, the plaintiffs, as such copartners, had a place of business in the thirty-second collection district of New York, where credits were opened by the deposit and collection of money and currency subject to be paid or remitted upon draft, check, or order, and where money was advanced and loaned by plaintiffs on stocks, bonds, bullion, bills of exchange, and promissory notes, and where stocks, bonds, bullion, bills of exchange, and promissory notes, were received by plaintiffs for discount and sale.

*Third*, That, during the period aforesaid, the said plaintiffs, as such copartners, duly paid the special tax imposed upon

them as bankers, in accordance with the provisions of the seventy-ninth section of the act of Congress entitled "An Act to provide internal revenue to support the government," &c., approved June 30, 1864.

*Fourth*, That, during the period aforesaid, the defendant was collector of internal revenue for the said thirty-second collection district of New York.

*Fifth*, That, during the period aforesaid, the plaintiffs bought and sold stock and gold, both of their own property on their own account, and also upon commission for other parties.

The sales in question were of three kinds: —

1st, Sales of their own property.

2d, Sales of gold, stocks, bonds, bullion, &c., transmitted to them by their correspondents, and the same or the proceeds drawn against; in some of which cases the sales of the transmitted property were made immediately, and the proceeds at once applied to the payment of drafts so drawn, and in others of which the drafts were accepted or paid; and the gold, stock, &c., were held for a better market, or to await further orders, and in the mean time stood as their security for their advances, and to provide reimbursement therefor. In other cases there were no actual advances, but the property held for sale; and, when sold by order of the customer, the proceeds were placed to credit, subject to draft.

3d, Sales of stock made in pursuance of an arrangement for what is called carrying stocks on a margin, wherein they, upon the deposit with them of a percentage on the amount of the stocks, advanced money and purchased stocks for the dealer or speculator (who dealt in hope of making a profit by the rise in the market-price), and held the same subject to his order to sell, and finally sold the same for his account as to profit and loss. These transactions were conducted in the name of the plaintiffs, the name of the customer not being disclosed to those to whom the stocks were finally sold.

Upon these purchases and sales they charged and received from their customers the usual commission for purchasing and selling stocks for account of others; and the tax imposed and paid to the United States on the sales was also charged to such customers. If the transaction showed a profit, it was paid

to the customer, with a return to him of the cash or security held as a margin; if the transaction resulted in a loss, the amount of such margin returned to the customer was correspondingly reduced.

*Sixth,* That, during the period aforesaid, the assessor of internal revenue for the said district assessed monthly against the said plaintiffs the tax of one-twentieth of one per centum on stock, securities, gold, &c., provided for by the ninety-ninth section of the act aforesaid, to be paid by brokers, and bankers doing business as brokers, and assessed such tax against the plaintiffs alike upon the securities, stocks, bullion, &c., sold by them on commission for others, and upon those owned by said plaintiffs, and sold by them upon their own account.

*Seventh,* That, at the times of the said several assessments so made by said assessor, the plaintiffs protested against their liability to pay, and against the right of the said assessor to impose or assess, the said tax of one-twentieth of one per centum, or any other sum whatever, upon the value of the stocks, gold, or securities owned by said plaintiffs, and sold by them upon and for their own account, and not upon commission or for others.

*Eighth,* That the assessment-roll containing said assessment was transmitted to the said defendant as such collector; and the said defendant, as such collector, demanded from said plaintiffs the whole sum so assessed against them by said assessor as and for the said tax; and the plaintiffs were compelled to pay, and did pay under protest, to the said defendant, as such collector, the said tax upon the whole amount of their sales during said period, including sales made on their own account as aforesaid.

*Ninth,* That the amount of such payments so made by the said plaintiffs, with the dates thereof, are correctly set forth in the schedule hereto annexed, marked " A : " the first column in such schedule showing the whole amount of such tax paid at the respective dates therein indicated; and the second column showing the portions of said several payments, which were for taxes upon sales made by plaintiffs upon their own account, and not upon commission, and which plaintiffs seek in this action to recover.

*Tenth,* That about the third day of December, 1870, the plaintiffs duly appealed, pursuant to law and the regulations of

the Treasury Department made in pursuance thereof, to the Commissioner of Internal Revenue, from the assessment and collection of said taxes, imposed upon said plaintiffs, upon sales made by them upon their own account, and claimed by them to be erroneously and illegally assessed against and collected from them; and the said commissioner, on the twenty-fourth day of May, 1871, and less than six months before the commencement of this action, rendered his decision upon said appeal adversely to these plaintiffs.

No further evidence was offered by either party.

Thereupon the counsel moved the said court that judgment be entered for the defendant, and said plaintiffs' counsel moved that judgment be entered for the plaintiffs.

After argument and deliberation, the court denied the said motion of said plaintiffs' counsel: whereupon the said counsel for the plaintiffs did then and there duly except thereto.

The court then directed that judgment be entered for the defendant; to which direction and conclusions of law of the court upon the foregoing facts set forth in said direction the said plaintiffs' counsel then and there duly excepted, and sued out this writ of error.

### SCHEDULE A.

*List of Taxes paid by John Warren & Son on Sales of Stocks and Gold.*

|  |  |  | Bills paid. | Amt. for own account. |
|---|---|---|---|---|
| **1865.** |  |  |  |  |
| June 16. | For April, on stock | $597.50 |  |  |
|  | „ „ on gold | 28.78 |  |  |
|  |  |  | $626.28 | $501.28 |
| 17. | For May, on stock | $324.65 |  |  |
|  | „ „ on gold | 38.42 |  |  |
|  |  |  | 363.07 | 295.25 |
| Aug. 19. | For June, on stock | $242.50 |  |  |
|  |  |  | 242.50 | 219.00 |
| Sept. 18. | For July, on stock | $515.75 |  |  |
|  | „ „ on gold | 60 |  |  |
|  |  |  | 516.35 | 366.75 |
|  |  | Carried forward | | $1,382.28 |

|  |  |  | Brought forward . . . $1,382.28 |
|---|---|---|---|
| Oct. 13. | For August, on stock . . $346.50 | | |
| | | $346.50 | 287.50 |
| Dec. 1. | For September, on stock . $422.95 | | |
| | „        „       on stock . 510.20 | | |
| | | 933.15 | 422.95 |
| 1866. | | | |
| Jan. 6. | For October, on stock . . $805.97 | | |
| | „       „     on stock . . . 685.50 | | |
| | | 1,491.47 | 685.50 |
| 18. | For November, on stock . $520.11 | | |
| | Allowed overpaid for Sept. 422.95 | | |
| | | 103.16 | 124.20 |
| April 2. | For February, on stock . $185.60 | | |
| | „         „        on stock . 172.50 | | |
| | | 358.10 | 172.50 |
| 28. | For March, on stock . . $227.10 | | |
| | „       „       on stock . . 311.50 | | |
| | | 538.60 | 311.50 |
| Sept. 21. | For April, on stock . . . $210.31 | | |
| | „ May, „ „ . . . 93.86 | | |
| | „    „    „   „   . . . 95.64 | | |
| | | 399.81 | . . . . . |
| | | | $3,386.43 |

*Mr. B. K. Phelps* for the plaintiffs in error.

*Mr. Assistant Attorney-General Edwin B. Smith* for the defendant in error.

MR. JUSTICE HUNT delivered the opinion of the court.

The plaintiffs were licensed bankers in the city of New York. They also bought and sold gold and stocks for others upon a commission paid to them for that service. On their own account, they also dealt largely in gold and stocks. They have paid the taxes imposed by the revenue laws upon bankers. The government agents have now imposed upon them, and collected the taxes chargeable by law upon brokers. This includes the tax of one-twentieth of one per cent upon sales made by the plaintiffs on their own account, as well as upon sales made for others. It is to this that the plaintiffs object, and the present action is brought to recover back such taxes.

The questions would seem to be, —

1st, Do the transactions specified make the defendants brokers within the meaning of the revenue laws?

2d, Are licensed bankers, who also do business as brokers, liable to the additional tax imposed upon brokers?

3d, More precisely, are the plaintiffs liable to pay taxes upon sales made on their own account, as well as when made for others?

Sect. 110 of the act to provide internal revenue, &c., approved June 30, 1864 (13 Stat. 277), imposes a duty of one-twenty-fourth of one per cent each month on deposits, one-twenty-fourth of one per cent each month on the capital, one-twelfth of one per cent each month on the circulation, and an additional one-sixth of one per cent on certain specified excess of circulation, to be paid by "any bank, association, company, or corporation, or person engaged in the business of banking, beyond the amount invested in United States bonds."

Sect. 79, subdivision of the same act (13 Stat. 251), provides "that bankers using or employing a capital not exceeding the sum of $50,000 shall pay $100 for each license," and for every additional $1,000 of capital two dollars; and that "every person, firm, or company, and every incorporated or other bank having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes, are received for discount or sale, shall be regarded a banker under this act."

The same sect. 79, subd. 9, as amended by the act of March 3, 1865 (13 Stat. 252, 472), provides "that every person, firm, or company, except such as hold a license as a banker, whose business it is, as a broker, to negotiate purchases or sales of stocks, exchange, bullion, coined money, bank-notes, promissory notes, or other securities, for themselves or others, shall be regarded as a broker under this act; provided that any person holding a license as a banker shall not be required to take out a license as a broker;" and it further provides that "brokers shall pay fifty dollars for each license."

The ninety-ninth section of the same act provides (13 Stat. 273) "that all brokers and bankers doing business as brokers shall be subject to pay the following duties, and rates of duties, upon the sales of merchandise, produce, gold and silver, bullion, foreign exchange, uncurrent money, promissory notes, stocks, bonds, and other securities, as hereinafter mentioned, &c.; that is to say, upon all sales, and contracts for sales, of stocks and bonds, one-twentieth of one per centum on the par value thereof; and of gold and silver, bullion and coin, foreign exchange, promissory notes, or other securities, one-twentieth of one per centum on the amount of such sales and of all contracts for sales."

The sections we have quoted furnish satisfactory definitions of the business of a banker and of that of a broker. "Every person, &c., having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes, are received for discount or sale, shall be regarded as a banker under this act." Sect. 79, subd. 1.

Having a place of business where deposits are received and paid out on checks, and where money is loaned upon security, is the substance of the business of a banker.

By the same section, subd. 9, a broker is defined to be one whose business it is to negotiate purchases or sales of stocks, exchange, bullion, coined money, bank-notes, promissory notes, or other securities, for himself or for others. Ordinarily, the term "broker" is applied to one acting for others; but the part of the definition which speaks of purchases and sales for himself is equally important as that which speaks of sales and purchases for others. All parts of the definition are qualified by the words "whose business it is." Thus, if A. B. has $10,000 which he desires to invest, and purchases United States stock, or State stock, or any other securities, he does not thereby become a broker. Nor if he owns $10,000 of United States stock which he wishes to sell to raise money to pay his debts, or because he is not satisfied with six per cent interest, is he

thereby made a broker. It is only when making sales and purchases is his business, his trade, his profession, his means of getting his living, or of making his fortune, that he becomes a broker within the meaning of the statute. Nor is it believed that a sale, by one doing a banking business only, of a security received by him for the repayment of a legitimate loan, would make him a broker, and subject to the tax. This would not be deemed an act of brokerage, either under the statute or upon general principles of law. When it is his business, the statute properly holds all such acts, whether in the name of himself ostensibly or in the name of others, as the acts of a broker. The danger and the facility for evasion of the statute furnish excellent reasons for the adoption of this provision.

The contention of the plaintiffs is, that, because they hold a license as bankers, they are not liable to the duty of one-twentieth of one per centum on sales made on their own account. This is based upon the words of sect. 79, subd. 9, that all persons, &c., except such as hold a license as bankers, shall be liable to this duty on sales made for themselves as well as others, and upon the further suggestion that sect. 99 does not contain the words "for themselves or others." We agree with the statement of Mr. Justice Grier in *U. S.* v. *Fisk*, 3 Wall. 445, that the idea of Congress would have been better expressed if the words "for themselves or others" had been inserted in sect. 99, rather than where they are now found. Still we find no difficulty in reaching the conclusion, that the tax in this case was properly imposed.

The intent of Congress to subject to taxation all sales made by those engaged in the business of brokers is plain enough. When it was said (sect. 99) "that all brokers and bankers doing business as brokers shall be subject" to the duties specified, it was intended to encompass the entire class of persons engaged in the business of buying and selling stocks and coin. Brokers were included by name and by definition. Bankers would not so certainly be embraced by the definition given in sect. 79, subd. 1. To meet this possible exception, it was enacted, that, when bankers should do the business of brokers, they should be subject to the duty specified. In this manner, brokers technically, and bankers doing the business of brokers, were made

liable to the duty.    If the right to tax bankers upon sales made
for themselves rested on the seventy-ninth section alone, a plausi-
ble argument could be made in the plaintiffs' favor, arising from
the words " except such as hold a license as a banker ; " but
when we read in sect. 99, " that all brokers, and bankers doing
business as brokers," shall be subject to the tax, and consider
the statutory definition of a broker, the plausibility of the
argument ceases.

We have carefully considered the cases of *U. S.* v. *Fisk,*
3 Wall. 445, *U. S.* v. *Cutting,* id. 441, and *Clark* v. *Gilbert,*
5 Blatch. 330, but do not deem it necessary to comment upon
them in detail.                                    *Judgment affirmed.*