Gorman, J.
This is an action to enjoin the auditor and treasurer of Hamilton county from collecting by distress on the goods and chattels of. plaintiff, $316.46, claimed to be due on account of the tax assessed for- the business of trafficking in intoxicating liquors at No. 210 West Eighth street in Cincinnati,
*210 Plaintiff is shown to be the owner of said house, 210 West Eighth street.
There is an entry on the liquor tax duplicate of Hamilton county for the year 1908 as follows: •
“Carrie Earl, 210 East Eighth street, ward six, commencing business February 19, $263.72.”
Plaintiff’s property wherein she resided on February 19, 1908, is in the ninth ward of said city, 210 West Eighth street and not -in the sixth ward, the distance between the two numbers being more than four city squares.
The evidence of .the two inspectors, Bamber and Dennis, is to the effect that on February 19, 1908, they went to a house, No. 210, West Eighth street, and asked for Carrie Earl; that a woman came to the door and admitted them, and said she was the landlady, Carrie Earl. The inspectors asked for a quart bottle of béer each and they were brought to them in a short time for which they- each paid twenty-five cents and in a short time thereafter they left the house. This occurred between 9 and 9:40 o’clock at night; Neither of the inspectors had ever seen the -woman before or been in that house previous thereto. It was apparently a private dwelling-house, but in reality either a. house of ill-fame or. an assignation house, perhaps the latter. The plaintiff was in court but the inspectors failed to identify her as the person who admitted them into the hohse’or -who brought them the beer.
Thé plaintiff testified that she never sold or gave any béer to the inspectors on said night; that she kept no beer in her house and never sold any beer therein. The inspectors said they would not know the woman who let them into the house or the woman who brought the beer. They came from up in the state where their homes are and -were here in Cincinnati to get evidence against persons conducting houses of ill-fame and assignation houses engaged in the business of trafficking in intoxicating liquors, so as to charge them with the payment of the tax. They ■were given the name of Carrie Earl, 210 West Eighth street among other places to visit. When going to an assignation house, their custom was to “pick up” street walkers, or women on the street who were out to ply their trade. In this case the inspectors picked up two women, went to the house of plaintiff, hired *211 and paid one dollar each for a room and procured or bought the beer as before stated. All this expense is charged up to the state-of Ohio.
. Now it is contended that the entry above set out on the duplicate makes out a prima facie case against plaintiff. Secti'on 1104,; Revised Statutes, provides that a certified copy of the entry on the duplicate shall be prima facie evidence on the trial of the amounts, validity and non-payment of said taxes. But if theevicléncé discloses that the entry on the duplicate is erroneous,as it was in the case at bar, at least there ivas no entry against= Carrie Earl or Carrie King, 210 West Eighth street, ninth ward, and that being the place, where it is admitted and shown that Carrie Earl or Carrie King resided and where it is- claimed the business was' carried on, this entry can not be prima facie evidence of the fact that Carrie E-arl was engaged in the business of trafficking in intoxicating licpiors at any other place than 210 East Eighth street, sixth ward.
The question then arises, ivas plaintiff under the name of Carrie Earl engaged in the business of trafficking in intoxicating liquors at 210 West Eighth street, ninth ward of Cincinnati, on February 19, 1908? : •
In the opinion of the'court the defendant’s case is not helped- or made out by the entry on'the duplicate for the reasons stated, ■ and the ease must stand or fall on the evidence of the inspectors and the plaintiff together with the .surrounding circumstances, and unaided by the entry on the duplicate. It is true, as- counsel for defendants contend, that the treasurer may proceed to dis-train and collect without making an entry on the duplicate, by virtue of Section 4364-12, Revised Statutes, but it must appear that the person whose property is about to be seized on distress, is or has been engaged in the business—admitting for the sake of the argument that the testimony of the two inspectors is un- ■ disparted. I arn of the opinion that the procuring of the beer in the house of the character- avhich plaintiff is shown to have' been conducting and in- the way this beer was procured does .not show that plaintiff was carrying on the said business.
The presumption, if there is a presumption to be indulged in. would be against that fact, because such sales are prohibited in such places under severe penalties under Sections 4364-1 to 4364-8 and Section 6943-5, Revised Statutes, and there would be in a *212 criminal case under these sections a presumption of innocence until the fact of guilt' were shown. -In this connection it seems to the court that the state which prohibits under severe penalties the traffic in intoxicating liquors, even the giving away thereof in,such places as houses of ill-fame and assignation houses, can hardly be justified in employing agents in the revenue department and-for the purpose of raising revenue to tempt and induce the keepers-of such hoiises to violate the law in order to enable the state to profit by the act of violating a law intended to minimize the evils connected with such houses. There is no equity or justice in allowing the state to profit by employing and paying agents to bring about a violation of some of its most salutary laws. Peidiaps the fault lies in our bad system of taxation, whereby the state seems to be willing to reach out by the hand of the tax gatherer and lajr hold of any thing, object, business or calling which will enable it.to raise revenue regardless of any moral question that might be involved in the levying and collecting of taxes.
I am of the opinion that the evidence in this case does not show that the plaintiff was engaged in the business of trafficking in intoxicating liquors at the times claimed by defendants, and that the two sales claimed to have been made do not constitute the carrying on of the business; and unless the court is to presume .from the fact that these sales were made, that it was the customary practice to .make sales in plaintiff’s house, then it appears to the court that the evidence does not support the defendant’s contention that plaintiff was engaged in said business:
• In University Club of Cincinnati v. Rattermann, 3 C. C., 18. our circuit coux’t' held, usixxg the language of Judge James M. Smith:
“It was hardly the intention of the Legislature to make persons or corporation liable to assessment for a single sale' of liquox*, or it may be for two or three isolated sales—but to require those who do it habitually, to pay the tax therefor..”
To the same effect is the opinion of Judge Rufus B. Sinith in the case of Voss & Co. v. Hagerty, 26 Bull., 268:
“But while the tax must be paid by every .person, * * for each place where the traffic in intoxicating liquors is carried pn, the law does not require a separate tax to be paid for every *213 place where a sale is made, unless the sale in such place is in pursuance of a ‘business’ carried on in that place. The tax is not upon a single sale, but upon the ‘business’ of ‘buying and selling’ or ‘procuring and selling.’ An occasional sale at a place by an agent who does not transport the liquor to the place, but solicits the sale of the liquor located in another place, does not of itself necessarily subject the principal to an additional tax in that place. ’ ’
Citing with approval University Club of Cincinnati v. Rattermann, supra, and quoting the above language of Judge J. M. Smith.
See, also, Miller v. State, 3 Ohio St., 475, 476, 488, 489; Harris v. State, 50 Ala., 127, 130; Warren v. Shook, 91 U. S., 711 (23 L. Ed., 421); 21 Am. & Eng. Enc. Law (2d Ed.), 811; Weil v. State, 52 Ala., 19; United States v. Kenton, 2 Bond, 97 (26 Fed. Cas., 763); Mercer Co. v. Helm, 102 Cal., 159, 168, 169; State v. Barnes, 126 N. C., 1063; Stanford v. State, 16 Tex. App., 331.
As to the cases cited by counsel for defendants on this question óf a single sale or two or three sales constituting a “business” or being acts from which the court will infer that the person making the sales was engaged in the “business,” the court is of the opinion that they can be distinguished from the ease at bar.
In DeMonte v. Pabst, 14 Dec., 97, there were two sales made in different months, and it was further shown that the person making the sales had taken out and held at the times of the sales a government license, or United States special tax, and by the provisions of Section 4364-15, Revised Statutes, this fact may be offered in proof that the person taking out this license or paying this United States special tax is engaged in the “business” and shall be prima facie evidence of the fact that such person is actually engaged in the “business,” etc., within the meaning of Sections 4369-9 to 4364-23, Revised Statutes. Volk v. Westerville, 3 N. P.—N. S., 241, was a criminal case where the accused was charged with unlawfully keeping a place where intoxicating liquors were sold at retail. It is impossible from the decision to determine under what section of the statutes the accused was convicted. If it were under Section 6942 then this decision is not in harmony or accord with the Ohio authorities. See McGuire *214 v. State, 42 Ohio St., 530; Oshe v. State, 37 Ohio St., 494; Johnston v. State, 23 Ohio St., 556.
If the conviction was under, some one of the numerous stat- ' utes prohibiting sales on certain days, at certain places, or to ,certain persons, then no doubt a single sale would be sufficient to convict, but this would not prove that the person making the sale was engaged in the business of trafficking in intoxicating liquors.
In the ease of Leonard v. Bowland, 4 N. P.—N. S., 577, the court does not hold that one or two or more sales constitute a case of engaging in the “business,” but on pages 580 and 581 that this sale must be taken in connection with the fact that the plaintiff by her own admission was, up to a short time before these sales, engaged in the business and that she was buying from a nearby saloon over the back fence at fifteen cents a bottle, and selling at a profit of eighty-five cents a bottle, and these facts together with the fact that she was charged on the duplicate with being engaged in the business made out a prima fads ease which she failed to overcome. This court is not disposed to go beyond the holding in this last case cited and is inclined to say with all due respect to the distinguished jurist who delivered the opinion, that the presumption in favor of the state in that case was stretched to its furthermost limits.
I do not deem it necessary to decide whether or not the person who procured the beer for the state’s agents at the house of plaintiff was acting as agent for the purchasers of the beer or of the owner of the house. Certain it is that there might have been inmates of that house who were not servants or employes of in procuring beer from some outside source of supply. It seems to the court that the evidence should fairly satisfy the mind of an ordinary man that such business was then carried on in that house, before holding that the burden of this tax should be assumed and paid by this, woman. I am not satisfied that such was the case and therefore an injunction will be granted as prayed for in the petition.
Moses Ruskin, for plaintiff.
J. L. Kohl, for E. Kleeman & Co.
Alfred Bettman, for defendant.
Margaret Hall v. Charles E. Roth.
Gorman, J.
The evidence in this case shows that plaintiff occupied a four-room fiat in the building known as No. 519 Smith street, Cincinnati, between January 1, 1908, and April 8, 1908; that on or about January 10, 1908, two inspectors from the dairy and food commissioner’s office visited Margaret Hall about 9 o’clock at night and were admitted to her apartments. They testified that there was present with plaintiff in her flat another woman; that Margaret Hall, when the inspectors came into the kitchen of the four-room fiat, was ironing and that she asked the inspectors to buy some beer and they thereupon consented and she, the plaintiff, took two quart bottles of beer from an ice box in the kitchen and charged them fifty cents each for a quart bottle of beer which they drank with the women and went away. There is a conflict of testimony about the relative location of the rooms, the exits and the entrances thereto and as to the furniture therein. Margaret Hall denied that she ever saw the men or sold them any beer, denied that there was any woman staying with her in the flat but said she lived there with a gentleman friend and that he paid the rent for the flat. It was a place not adapted to the sale of intoxicating liquors but oh the contrary according to the testimony of all persons was fitted up. adapted for, and apparently intended to be used as a place of residence of two or three or four persons. The furniture and household goods contained in the flat were covered by a chattel mortgage to Edward Kleeman & Co., executed long prior to the time when Margaret Hall is claimed to have commenced the business of trafficking in intoxicating liquors. On the trial the inspectors failed to identify Margaret Hall as the person whom they saw in the kitchen of the flat and from whom they claimed to have purchased the beer. The entry on the duplicate against Margaret Hall was made from information furnished by these two inspectors to the auditor of state and by him transmitted to the auditor of Hamilton county. This case has been very ably *216 presented on briefs and argued orally by Mr. Bettman for the defendants and by Mr. Kohl for E. Kleeman & Co., and I have read their briefs with great interest and examined the authorities cited with a view of arriving at a correct conclusion as to the facts as well as the law of the case.
It is urged very strenuously by counsel for defendants that these two sales, assuming for the purpose of the case that the testimony of the. inspectors is to be given greater credence and Aveight than that of Margaret ITall, taken in connection with .the surroundings and the attending circumstances, raises a presumption that these Avere not the only sales so made but that from the facts of a larger price being charged for the beer and the readiness displayed by the person offering to sell, that it was .the customary and usual thing to do in that effect.
On the other hand, if this flat be considered, as the inspectors treated it, a house of ill-fame, because they Avent there without the female companions which they picked up AAdien going to an assignation house—-I say if this be considered a house of ill-fame from the fact that the sale or giving away of liquors is prohibited in such houses, we would not expect ordinarily to find any liquors therein. Again it is urged that a failure to hold under the circumstances of this case that these sales claimed to have been made show that plaintiff was engaged in the business, will be fraught with dire results to the revenue department of the state. I do not think .that the decision in this case Avill have any such serious effects upon the revenues of the state .as counsel for defendants appear to apprehend. The traffic in intoxicating liquors can not, to any great extent, be carried on secretly. There must be a resort to the places where they are sold by the public or a considerable number of persons before the business can be carried on profitably. In houses of ill-fame the traffic is entirely prohibited and if the police department and the state authorities do their duty under existing laws by endeavoring to punish for a violation of these laws forbidding the traffic or giving away of liquors in such places, instead of encouraging the keepers of such places to violate the laAv, and setting snares to catch these unfortunates in order to squeeze revenue out of them, the traffic will then be confined to the open .and public places Avhich advertise and hold out to the public the fact that they are engaged in the business and make no concealment thereof but on the con *217 trary voluntarily go up to the' county treasury and pay the tax and list their places.
The evidence in all these cases which have been before the court Shows that there is apparently no effort made to learn of sales without the payment of the tax, except in houses of ill-fame and assignation houses; and the evidence further discloses that the state is allowing these inspectors, who are married men, their expenses of paying for rooms in assignation houses and expenses in houses of ill-fame and for buying beer and picking up street walkers to go with them to such resorts, all in the name of the great state of Ohio to raise revenue, whereas the state and every department thereof should be using every effort to suppress the traffic in such houses and enforcing the law prohibiting such sales of liquor. This court is appealed to, as a court of equity, to find in favor of such practices; and i,t must and no doubt does appeal to the humorous side of the state agent’s character when the courts readily fall into line with their efforts to raise revenue from these sources.
I am of the opinion that the evidence in this case does not disclose that plaintiff was engaged in the business of trafficking in intoxicating liquors at the time it is claimed by defendants she was so engaged. But I would recommend to counsel for defendants that as prosecuting attorney of this county, it might be well to inquire into any violations of Sections 4364-1 to 4364-8, Revised Statutes, and Section 6943-5, Revised Statutes, and see plaintiff and who could have acted as agents of the purchasers that the police authorities and other executive officers of the city of Cincinnati and Hamilton county endeavor to carry out the will of the Legislature by enforcing those sections referred to and then perhaps there will not be the occasion for the employment of so many inspectors and the expenditure of the state’s money in a shameful endeavor to snare wretched women conducting resorts prohibited by law. The cases cited in the opinion handed down today of Carrie King against Chas. E. Roth, Treasurer, may be applied to the facts in this case. Counsel for E. Kleeman & Co. in his very able brief has also cited several authorities in support of the proposition that one sale, or two or a few sales do not constitute a ‘ ‘ business. ’ ’
The court is further of the opinion that even if these sales were sufficient to raise the presumption that the plaintiff was *218 engaged in the “business,” the household goods such as beds, chairs, carpets and such other chattels as were in the flat and covered by the chattel mortgage can not be considered as being goods and chattels used in the conduct of the business of trafficking in intoxicating liquors, such as counters, side-boards, liquors, etc., and therefore the lien of E. Kleeman & Co. is superior to that of the state by virtue of its lien under Section 4364-12, Revised Statutes.
An injunction will be granted as prayed for in the petition and answer and cross-petition of E. Kleeman & Co.