## SCHWEIZER v. MAGER.

(District Court, N. D. Illinois, E. D. February 29, 1924.)

No. 34580.

1. **Internal revenue ⬤⇒9—Commission produce merchant is "broker," under Revenue Act of 1918.**

Under Revenue Act 1918, § 1001, subd. 1 (Comp. St. Ann. Supp. 1919, § 5980o), imposing a special tax on brokers, and providing that "every person whose business it is to negotiate * * * sales of * * * produce or merchandise for others shall be regarded as a broker," one who receives farm produce for sale on commission, advances the charges thereon, sells it in his own name, and remits the proceeds, less charges and commission, is a "broker," and subject to the tax.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Broker.]

2. **Statutes ⬤⇒179—Statutory definition of words governs.**

Where Congress expressly defines words in a statute, that definition must govern the courts in applying the statute.

3. **Statutes ⬤⇒225¾—Re-enactment after administrative construction adopts such construction.**

Re-enactment of a provision of a revenue statute, after a construction has been placed thereon by the Treasury Department, is an approval of such construction.

At Law. Action by Albert H. Schweizer against Harry F. Mager, former Collector of Internal Revenue for the First District of Illinois. On demurrer to declaration. Demurrer sustained.

John M. Sternhagen, of Chicago, Ill., for plaintiff.
Edwin A. Olson, U. S. Atty., of Chicago, Ill., for defendant.

LINDLEY, District Judge. Defendant demurs to plaintiff's declaration, which alleges: That plaintiff is in the business of receiving farm produce for sale on commission, which he sells as such commission merchant to others to be resold at retail. That the plaintiff receives said goods into his possession, advances all necessary charges thereon, such as carriage and warehouse and inspection charges, and sells same in his own name, only receiving the proceeds and transmitting the same to the consignor, deducting all advancements and his commission. That he paid all federal tax imposed by the government under section 1001 of the Revenue Act of 1918 (U. S. Comp. St. Ann. Supp. 1919, § 5980o), which is as follows:

"That on and after January 1, 1919, there shall be levied, collected, and paid annually the following special taxes: Brokers shall pay $50. Every person whose business it is to negotiate purchases or sales of stocks, bonds, exchange, bullion, coined money, bank notes, promissory notes, other securities, produce or merchandise, for others, shall be regarded as a broker. * * *"

That said tax was imposed by the government without any authority, and that he has complied with the conditions precedent to a recovery of the alleged illegal tax, which he seeks to recover in the manner prescribed by law. The only question is whether, under the facts pleaded,

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the plaintiff comes within the class of people upon whom, by said section, a tax is imposed.

[1] Plaintiff contends that by the section in question, purporting to tax all persons whose business it is to negotiate sale or purchases of merchandise for others, inasmuch as the preceding sentence refers only to brokers, it was the intent of Congress to tax only those who are within the ordinary legal definition of "broker," who ordinarily sells for another in the name of another, without having the res in his possession, and that Congress, by using the word "broker," could not have intended to include those who have the custody and possession of the res and sell in their own name.

[2] But Congress does not limit the tax to ordinary brokers. It expressly provides that "every person whose business it is to negotiate sales * * * of produce or merchandise for others shall be regarded as a broker." Congress has defined the word by a new definition all its own. It has not said that all people included within the ordinary definition of broker shall be taxed, but has extended the term to include all who buy or sell merchandise for others. The act is remedial in character and to be construed liberally. Cliquot's Champagne, 3 Wall. 114, 18 L. Ed. 116. The statutory definition must control, and there being no ambiguity the question of what or who was to be included is to be determined from the words used. Lau Ow Bew v. U. S., 144 U. S. 47–59, 12 Sup. Ct. 517, 36 L. Ed. 340. Where Congress expressly defines words that definition must govern the courts. Wampole & Co. v. U. S., 191 Fed. 573, 112 C. C. A. 633; Collins v. Texas, 223 U. S. 288, 32 Sup. Ct. 286, 56 L. Ed. 439; Pub. Util. Com. v. Chicago, etc., Co., 275 Ill. 555, 114 N. E. 325, Ann. Cas. 1917C, 50. In Warren v. Shook, 91 U. S. 704, 23 L. Ed. 421, the court had under consideration an act that defined "broker" as "one whose business it is to negotiate purchases or sales * * * for himself or others." The court refused to limit those taxed to the class included ordinarily within the meaning of the term "broker," but, in view of the statutory definition of Congress, included within the term "broker" one who dealt for himself.

The acts of 1864 (13 Stat. 223, § 79) and 1866 (14 Stat. 115) taxed under different paragraphs "wholesale dealers," "brokers," "produce brokers," "commercial brokers," "cattle brokers," and others. In Slack v. Tucker & Co., 23 Wall. 321, 23 L. Ed. 143, the Supreme Court held that Tucker & Co., who dealt in merchandise on commission for others, selling in their own names goods that were intrusted to them, were not produce brokers, or commercial brokers, but wholesale dealers, because Congress had so defined wholesale dealers as to include:

"One whose business it is, for himself or on commission, to sell any * * * merchandise, * * * whose annual sales exceed $20,000."

This conclusion was reached despite the fact that the court said that Tucker & Co. were factors, which term, in the ordinary legal sense, includes those who have the possession of the goods and sell in their own name. Despite the proper ordinary classification as factors or commission merchants, the firm was held to be a wholesale dealer, because Congress had expressly defined the term so as to include fac-

tors. So in the present case Congress has so defined the class "broker" as to include the class "factors." Similar cases of statutory definition prevailing over ordinary definitions are U. S. v. Hance (D. C.) 184 Fed. 528, 191 Fed. 573, 112 C. C. A. 633; Cothran v. U. S. (D. C.) 276 Fed. 48, and (C. C. A.) 283 Fed. 973. As said in Thompson v. United States, 246 U. S. 547, 551, 38 Sup. Ct. 349, 351 (62 L. Ed. 876):

"The intention of the Congress is to be sought for primarily in the language used, and where this expresses an intention reasonably intelligible and plain it must be accepted without modification by resort to construction or conjecture. Gardner v. Collins, 2 Pet. 58, 93; United States v. Goldenberg, 168 U. S. 95, 102."

The fact that in the present act Congress has eliminated all the special classifications taxed under different paragraphs in the prior acts mentioned, but has included in one classification all those previously taxed under different paragraphs, manifests clearly an intention upon the part of Congress to do away with the ordinary distinctions between factors, commission agents, brokers, produce brokers, wholesale dealers, and commercial brokers. Further corroboration of such intention is found in the fact that whereas, in earlier acts the definition of broker was limited to one who buys or sells "as a broker," Congress has in the 1918 act entirely eliminated such qualifying and restrictive words.

[3] Congress in the act of 1921 (Comp. St. Ann. Supp. 1923, § 5980o), re-enacted section 1001 (1) of the act of 1918, without change. In the meantime, in January, 1920, the Treasury Department, in regulation 59, article 6, provided, inter alia, that a commission merchant receiving merchandise for sale on consignment for the account of the consignor is within the term broker as defined by the act. With this practical interpretation by the executive department before it, by its re-enactment Congress must have intended to approve the construction then being enforced. In Nat. Lead Co. v. U. S., 252 U. S. 140, 40 Sup. Ct. 237, 64 L. Ed. 496, the court had under consideration the drawback provision of the revenue laws. The court said:

"To this we must add that the department's interpretation of the statute has had such implied approval by Congress that it should not be disturbed. * * * The re-enacting of the drawback provision four times, without substantial change, while this method of determining what should be paid under it was being constantly employed, amounts to an implied legislative recognition and approval of the executive construction of the statute, * * * for Congress is presumed to have legislated with knowledge of such an established usage of an executive department of the government. * * *"

Other authorities to the same effect are McDonald v. Hovey, 110 U. S. 619, 629, 4 Sup. Ct. 142, 28 L. Ed. 269; United States v. Philbrick, 120 U. S. 52, 58, 7 Sup. Ct. 413, 30 L. Ed. 559; N. Y., N. H. & H. R. R. Co. v. Int. Com. Com., 200 U. S. 361, 401, 26 Sup. Ct. 272, 50 L. Ed. 515; Copper Queen Mining Company v. Arizona Board, 206 U. S. 474, 479, 27 Sup. Ct. 695, 51 L. Ed. 1143; United States v. Baruch, 223 U. S. 191, 199, 32 Sup. Ct. 306, 56 L. Ed. 399.

In Brown v. U. S., 298 Fed. 177, cited by the plaintiff, the court held

that live stock is not within the term "merchandise," used in section 1001 (1) of the act of 1918. Such question is not involved in the case now before the court.

The demurrer is sustained.