## BRENHAM PRODUCTION CREDIT ASSOCIATION V. GEORGE H. ZEISS ET AL

No. A-4314. Decided December 16, 1953.
Rehearing overruled February 24, 1954.
(264 S.W. 2d Series 95)

*Richard Spinn* of Brenham, *Ralph W. Yarbrough* and *E. Wayne Thode,* both of Austin, for petitioner.

The Court of Civil Appeals erred in holding that said association was a bank and could be taxed accordingly. Marvin v. Kentucky Title Trust Co., 218 Ky. 135, 291 S.W. 17; Kaliski v. Gossett, 109 S.W. 2d 340; Sweeney v. El Paso B. & L. Ass'n., 26 S.W. 290.

*W. J. Embrey,* of Brenham, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

The City of Brenham sought to levy taxes for the year 1951 on the capital stock and surplus of the Brenham Production Credit Association upon the theory that the association is a banking corporation governed for taxation purposes by Article 7166, Vernon's Annotated Statutes. The trial court held the assessment void as a matter of law and enjoined the City from attempting collection of the tax. This judgment was reversed and rendered by the Court of Civil Appeals, holding the association in effect to be a "banking corporation" and validating the assessment against the Brenham Production Credit Association as agent for the individual stockholders. 259 S.W. 2d 299. The facts are amply revealed in that opinion and we shall avoid unnecessary reiteration.

The outstanding capital stock of this association, both Class A and Class B, was in the total sum of $120,000. Of the 501 member stockholders only four lived within the City of Brenham, owning stock in the aggregate amount of $1,035.00. The question before us concerns the taxable situs of the shares of stock. In other words, does the City of Brenham have the sole and exclusive right to levy taxes against all the shares of stock in this association or are the shares to be taxed by those political entities in which the shareholders reside? It is conceded that this property may be assessed for taxation by the State and its proper subdivisions, since all of the stock held in the association by

the Production Credit Corporation has been retired. Section 1138c, Title 12, Banks and Banking, U.S.C.A.

The solution of the problem depends upon the determination of whether or not the status of the association is that of a "banking corporation" as contemplated by Article 7166, Vernon's Annotated Civil Statutes. We are of the opinion that the association does not occupy such a position and that the assessment levied by the City of Brenham is invalid.

The authority relied upon by the respondents to uphold the assessment is First Trust Joint Stock Land Bank v. City of Dallas, 167 S.W. 2d 783, wr. ref., which held non-residents of this state to be taxable by the City of Dallas on the shares of stock owned by them in a joint stock land bank. This case, in our opinion, has no controlling application to the situation before us.

■ A production credit association is to be distinguished from a joint stock land bank in a number of respects. The latter is specifically designated as a bank. It has authority to issue bonds based upon the mortgages taken by it, and is designated as a depository of public money. Its borrowers are not required to become stockholders. Its offerings of capital stock are open to the public. At the time involved, shareholders of joint stock land banks were subject to double liability. Sections 811-824, Title 12, Banks and Banking, U.S.C.A.

On the other hand this association is organized under and its scope and powers are set forth in Section 1131d, et seq., Title 12, U.S.C.A. Such an organization may be formed with the approval of the Governor of the Farm Credit Administration by ten or more farmers desiring to borrow money. Its loans are restricted to farmers for general agricultural purposes and borrowers are required to purchase stock in the association up to five per cent of the desired loan. The association is empowered to issue no bonds. It serves as a depository for no funds, either public or private, and rather carries its own funds in three separate banks, the greater part of same being on deposit in two banks outside the City of Brenham.

However, the all-compelling ground upon which the joint stock land was held in the above cited case to be a bank and the shares of such bank owned by non-residents to be taxable by the City of Dallas was by virtue of the provisions of Section 932, Title 12, U.S.C.A., relating to joint stock land banks, as follows: "* * * but such assessment and taxation shall be in manner and

subject to the conditions and limitations contained in Section 548 of this Title (12 U.S.C.A.) with reference to the shares of national banking associations." No such provisions apply to this association.

■ Historically a bank served merely as a place for the safe-keeping of the depositors' money and even now that is a primary function of a bank. 9 C.J.S., page 31, Banks and Banking, Section 3. The term "bank" now by reason of the development and expansion of the banking business does not lend itself to an exact definition. 7 American Jurisprudence, Banks, Section 2.

In Kaliski v. Gossett, 109 S.W. 2d 340, 344, wr. ref., the following is quoted with approval from In Re Prudence Company 2 Civ. 79 Fed. 2d 77: "Strictly speaking the term bank implies a place for the deposit of money, as that is the most obvious purpose of such an institution."

In Warren v. Shook, 91 U.S. 704, 23 L. Ed. 421, the court observes that "having a place of business where deposits are received and paid out on checks and where money is loaned upon security is the substance of the business of a banker."

While, of course, the lending of money is one of the principal functions of a bank, nevertheless there are many agencies authorized by both state and federal governments to lend money, which are not banks nor considered as such. Articles 1302a and 1303b expressly authorize the chartering of corporations to lend and borrow money, but without "banking privileges." It follows therefore that the intendment of the legislature in enacting Article 7166, C.A.C.S. must have encompassed more than the lending and borrowing of money in the scope of the terms "banking privileges" or "banking corporation."

■ The activities of this association are limited by law to making short-term loans to farmers for agricultural purposes and only to those who purchased stock in the association. To carry out such function it was authorized to borrow from and rediscount paper with Federal Intermediate Credit Banks and could deal in that respect with no other bank or agency except with the approval of the Governor of the Farm Credit Administration. Section 1131h, Title 12, U.S.C.A. It cannot deal in exchange or purchase notes and is not under the supervision of the national or state banking authorities.

In U.S. v. Thomas, 5 Cir., 1939, 107 Fed. 2d 765, it is said:

"The Farm Credit Administration is not a commercial adventure, but is merely intended to lend aid and assistance to farmers who have no credit and no money with which to purchase feed for their livestock and seeds for their crops."

It is argued that, by reason of the inclusion of the statutes authorizing the establishment of production credit associations, in Title 12, Banks and Banking, U.S.C.A., by implication these associations must be treated as banks. We think there is no force or validity in that argument. The sections dealing with this association are a part of the Farm Credit Act of 1933 and provide that such associations are to be organized, managed and conducted by rules and regulations prescribed by the Governor of the Farm Credit Administration.

The code is only a compilation for convenience and it cannot be successfully contended that such codification has added to or modified in any respect the intention of Congress in enacting these measures into law. In this connection the United States Court of Appeals in the case of Murrell v. Western Union Telegraph Co., 5 Cir., 160 Fed. 2d 787, 788, states the law as follows:

"The United States Code was not enacted as a statute, nor can it be construed as such. It is only a prima facie statement of the statute law. *The statutes collected in it did not change their meaning nor acquire any new force by their inclusion.* If construction is necessary, recourse must be had to the original statutes themselves. Section 2(a) of the Act of June 30, 1926, 44 Stats., Part 1, page 1."

We believe that this association does not occupy the status of a "banking corporation" in the purview of Article 7166, V.A.C.S. Therefore, the City of Brenham was without authority to levy a tax upon the shares of stock owned by individuals who were not residents of that city.

The judgment of the Court of Civil Appeals is accordingly reversed and the judgment of the trial court affirmed.

Opinion delivered December 16, 1953.

Rehearing overruled February 24, 1954.