

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

December 1 , 1958

Honorable Zollie Steakley
Secretary of State
Capitol Station
Austin, Texas

Opinion No. WW-527

Re: Is the proposed purpose "to
operate under the Small Business
Investment Act of 1958 a fully stated
purpose under Article 2.01A of the
Business Corporation Act?" May
the Secretary of State accept and
file articles of incorporation recit-
ing that the corporation is to have
all the powers specified in the Small
Business Investment Act, including
the power "to act as depositary or
fiscal agent of the United States when
so designated by the Secretary of the
Treasury" and related questions?

Dear Sir:

You have requested our opinion concerning your authority to
accept and file articles of incorporation of proposed corporations being
formed for the primary purpose of operating under the Small Business
Investment Act of 1958 (Public Law 85-699, 85th Congress, S. 3651, August
21, 1958). Your first question is whether or not "the proposed purpose to
operate under the Small Business Investment Act of 1958 is a fully stated
purpose under the requirements of Article 2.01A of the Business Corpora-
tion Act." Your second question relates to your authority to file a charter
which recites, that "the corporation shall have and exercise all the powers
specified in the 'Small Business Investment Act of 1958'. . .Clause (i).
To act as depositary or fiscal agent of the United States when so designated
by the Secretary of the Treasury." Your third question, to be answered
only if we conclude that the power to act as such a depositary or fiscal
agent is a banking or trust company power, concerns your authority to act
in situations where such language is qualified by the words "without bank-
ing and discounting privileges."

Article 2.01A of the Business Corporation Act provides that
corporations for profit may be organized for any lawful purpose or purposes,
"which purposes shall be fully stated in the articles of incorporation." It
will be noted that this language is somewhat more restrictive than that
contained in the old corporation law (Article 1304 V.C.S.) which merely
provided that "A charter must be prepared setting forth . . . the purposes
for which it is formed." Yet even under the prior enactment it had been

well settled that the charter must state the proposed purpose with particularity. Many have been struck down for vagueness by previous attorney general opinions. See, for example, O-5960, O-4355, V-1075 and WW-440. The principle underlying this requirement is given in 10B Tex. Jur. 87, Corporations, Sec. 41:

> "The requirement that the purpose of the corporation be stated in its articles is for the protection of the incorporators and stockholders, and the public, in order that they may be advised as to the character of the corporate activities, and to enable the state, through its proper officers, to collect filing fees and franchise taxes, and to supervise and control the use and to punish the non-use of the corporate franchise." (Emphasis supplied.) See also Johnston v. Townsend (Sup. Ct. 1910) 103 Tex. 122, 1245 S.W. 417.

As stated in the speech of the Honorable Wright Patman in the United States House of Representatives, August 21, 1958, which incorporates a report by the Small Business Committee explaining the provisions of the bill, the purpose of a Small Business Investment Company is "to help small business concerns raise capital...by making loans directly, or by purchasing the debentures of the small business concern." Yet this ultimate purpose cannot be gleaned from the charter provision in your first question without reference to the act itself. We have concluded therefore, that the proposed purpose contained in your first question violates the provisions of Article 2.01A.

Your second question presents a much more difficult problem. Since the passage of the Texas Business Corporation Act, corporations for profit may be formed for any lawful purpose or purposes. (Art. 2.01A) At this point we must refer to our opinion WW-440 addressed to you on May 30, 1958. As was pointed out therein many of the lawful purposes for which corporations could be formed prior to the Business Corporation Act contained restrictive provisions or words of limitation. These were provided in order to "limit the purposes for which a corporation might legally do business within this state so that it could not transact business which was properly being transacted by other corporations which were under strict regulatory and supervisory limitations imposed by law, and which were administered by state officers or agencies."

It was one of the conclusions of that opinion that "in enacting the Business Corporation Act the Legislature manifestly did not intend to remove the restrictive provisions or words of limitation which qualified the lawful purposes granted by it. (Art. 9.15B)" Another conclusion of this opinion, as well as of Opinion WW-77 and WW-503, is that corporations organized under the Business Corporation Act may perform some of the functions normally carried on by banking institutions as long as they are

performed without the exercise of banking or discounting privileges. For convenience, throughout the remainder of the opinion these prohibited privileges will be denominated "banking functions", or "prohibited banking functions."

Therefore, the answer to your second question depends upon whether or not, once a Small Business Corporation has been organized and designated a depositary or fiscal agent of the United States by the Secretary of the Treasury, it will be performing a prohibited banking function. This in turn involves both a discussion of prohibited banking functions as well as a discussion of the duties of a United States depositary or fiscal agent.

## BANKING FUNCTIONS

According to Volume 1 of Michie, on Banks and Banking, Section 2, page 6, "the chief function of a 'bank' involves the receipt of deposits from the general public, repayable to the depositors on demand or at a fixed time, and the use of deposit funds for secured loans, and the relationship of debtor and creditor, between the bank and depositor."(Emphasis supplied).

The opinion written by Chief Justice Cureton, while Assistant Attorney General, in the Report and Opinions of Attorneys General of Texas, (1912-1914), page 342, is an exhaustive study of prohibited banking functions in connection with corporations seeking to organize under what was then Subdivision 29 of Article 1121, which authorized the formation of corporations for "the accumulation and loan of money; but these subdivisions shall not permit corporations with banking or discounting privileges." He states that "the ordinary and usual powers exercised by banks. . . are to discount notes and receive deposits." With regard to the meaning of "discount" the opinion concludes, that in order for a transaction to become a discounting transaction within the technical and banking meaning of the word "discount", two facts must exist.

(1). "Less than the face value of the note must be paid for it."

(2). "The party offering the note to the bank must be liable upon the note either as a maker, endorser, or guarantor. In the absence of either of these two requisits the transaction is not a discounting one such as is inhibited by the statute under examination."

Cureton then proceeds to discuss the question of the receipts of deposits as a banking function.

-3-

"Having shown that the receiving of deposits is the exercise
of a banking privilege, and therefore inhibited to corporations
chartered under the statute we are discussing, it next devolves
upon us to determine the nature of the relation created between
a depositor and the bank. It is elementary that a general deposit
of money in a bank creates a debt from the bank to the depositor. ."

"We take it as well settled then that generally when we refer
to the receipt of deposits by a bank we refer to the creation of the
relation of debtor and creditor as between the bank and its deposit-
ors, and not to the creation of the relation of bailee, although in a
case of special deposits the relation of bailee may sometimes be
created. However, in the general and ordinary sense of the terms
as used in the business of banking we would say that the receiving
of deposits as a banking privilege is the receiving of general de-
posits or special deposits which create the relation of debtor and
creditor and not the relation of trustee and cestui qui trust or of
bailee and bailor or of principal and agent."

"From this opinion (Merchantile National Bank of New York
v. Mayor, etc of New York, 121 U. S. 138) it is clear that the re-
ceipt of money by a corporation as bailee or as agent for the
purpose of investment and not as a deposit in which the relation
of debtor and creditor is created, would not be the exercise of a
banking privilege ; for it is seen from the definition of the busi-
ness of banking as given by the Supreme Court of the United
States in this case, that the receipt of deposits as a banking
privilege generally is the "receiving of deposits payable on
demand."

## DEPOSITARY AND FISCAL AGENTS

Authorities are few which are definitive as to just what a United
States depositary or fiscal agent is or does. In Thomas Branch, et al v.
The United States, 12 Ct. Cls. 281, affirmed 100 U.S. 673, 25 L.Ed. 759,
the court, in discussing the status of a national bank as a depositary, had
the following to say:

"Designating a national bank as a depositary of public
money under this provision does not change the character
of its organization, or convert its managers into public
officers, or give to the Government any additional control
over the institution, or render the United States liable for
any of the acts, contracts, or obligations of the bank. Nor
does it constitute the bank a general financial agent of the
Government, but when after such designation it is required
by law or by direction of the Secretary of the Treasury to

-4-

perform any financial duties for the United States, it then becomes a special agent for the particular purpose required, with no power to bind the Government beyond the special authority conferred upon it. . ."

"But when public money is deposited with a designated-depositary national bank, it is not there retained in kind as the special property of the United States, of which the bank is made the custodian, but it becomes at once the property of the bank, is mingled with its other funds, is loaned or otherwise employed in the ordinary business of the corporation, and the bank, instead of being the custodian of public money, becomes a debtor to the United States precisely as it does to other depositors on receipt of individual deposits . . . The Government has the same rights and remedies against the bank as other creditors have. If the bank fails, the United States resort to the collateral security, if any, given to secure the deposits of public money to the extent of the proceeds thereof. . ."
(Emphasis supplied).

The General Counsel of the United States Treasury, in an opinion dated May 9, 1947, had the following to say concerning the duties devolving upon a particular bank subsequent to its designation as "financial agent of the Government":

"As you are aware, the Federal Reserve Bank of New York has been called upon, pursuant to this provision, to perform a wide variety of functions for the Government, including the assisting in carrying out the Foreign Funds program (in this it shared its duties with other Federal reserve banks), the purchase and sale of gold for the United States, the purchase and sale of currencies under stabilization agreements, the purchase of foreign silver under the Silver Purchase Act of 1934, the carrying of accounts for the UNNRA, and the carrying of an account for Saudi Arabia."

Certain sections of the Code of Federal Regulations are pertinent to an inquiry as to the duties of a depositary or fiscal agent, particularly the following from Title 31, Money and Finance: Treasury.

General Provisions and Definitions:

Section 202.1
(e) General depositaries; definition of. The term 'general depositaries' as used in this part means depositaries and financial agents of the Government that have been authorized to maintain on their

-5-

books an account in the name of the Treasurer of the United States. General depositaries are designated and maintained only at points where depositary is needed to receive deposits from depositors of public monies for credit to the account of the Treasurer of the United States or to render other essential Banking services authorized by the Secretary of the Treasury. The balances maintained with general depositaries to the credit of the Treasurer of the United States are fixed in proportion to the volume and character of the Government business transacted by such depositaries and are adjusted periodically upon that basis. General depositaries, when so authorized by the Secretary of the Treasury, may also accept deposits for credit in the official checking accounts of other Government officers with such depositaries."

(f). Limited depositaries; definition of. "The term 'limited depositaries' means depositaries and financial agents of the government that have been designated by the Secretary of the Treasury for the sole purpose of receiving, up to specified maximum amounts, deposits made by capitalized government officers for credit in their official checking accounts with such depositaries. Limited depositaries are not authorized to accept deposits for credit to the account of the Treasurer of the United States."

Section 202.4 Deposits by Government officers with general and limited depositaries for credit in their official checking accounts with such depositaries.

"It is the responsibility of government officers to maintain the balances (including the outstanding drafts) in their official checking accounts with general and limited depositaries within the authorized limits, fixed by the Secretary of the Treasury. If a government officer determines that the balance in his official checking account will exceed the authorized limit of the depositary in which the account is maintained, he shall immediately advise the Secretary of the Treasury through his administrative office and the Treasury will take action to obtain additional collateral from the depositary and will increase its authority accordingly. . ."

FOR SPECIAL ATTENTION OF GENERAL DEPOSITARIES

Section 202.15 Classes of General depositaries.

"There are two classes of general depositaries, namely, 'active general depositaries' and 'inactive general depositaries'. An 'active general depositary' is a depositary which is authorized

-6-

to maintain on its books an account in the name of the Treasury of the United States and is authorized to accept deposits from government officers for credit in that account. An 'inactive general depositary' is a depositary that is authorized to maintain on its books an account in the name of the Treasury of the United States, but does not have authority to accept deposits from government officers for credit in that account."

Perhaps the case most directly in point on this question in Texas is Brenham Production Credit Association v. Zeiss, 264 S.W.2d 95 (Sup. Ct. 1953) 153 Tex. 152 wherein the City of Brenham was seeking to tax the Brenham Production Credit Association on the theory that it was a banking corporation as contemplated by Article 7166 V.A.C.S. The Court concluded that it was not such a banking corporation. The opinion will be quoted at some length below inasmuch as it has a bearing not only on the answer to your second question, but on the third as well.

"A production credit association is to be distinguished from a joint stock land bank in a number of respects. The latter is specifically designated as a bank. It has authority to issue bonds based upon the mortgages taken by it, and is designated as a depository of public money. Its borrowers are not required to become stockholders. Its offerings of capital stock are open to the public." (Emphasis supplied.)

"Its loans are restricted to farmers for general agricultural purposes and borrowers are required to purchase stock in the association up to five per cent of the desired loan. The association is empowered to issue no bonds. It serves as a depositary for no funds, either public or private, and rather carries its own funds in three separate banks, the greater part of same being on deposit in two banks outside the City of Brenham."

The Court quotes the following from Warren v. Shook, 91 U. S. 704, 23 L. Ed. 421.

". . . having a place of business where deposits are received and paid out on checks, and where money is loaned upon security is the substance of the business of a banker."

"While, of course, the lending of money is one of the principal functions of a bank, nevertheless there are many agencies authorized by both State and Federal governments to lend money, which are not banks nor considered as such. Articles 1302a and 1303b expressly authorize the chartering of corporations to lend and borrow money, but without 'banking privileges'. . ."

"The activities of this association are limited by law to making

-7-

> short-term loans to farmers for agricultural purposes and only to those who purchase stock in the association. To carry out such function it was authorized to borrow from, and rediscount paper with, Federal Intermediate Credit Banks and could deal in that respect with no other bank or agency except with the approval of the Governor of the Farm Credit Administration. . . It cannot deal in exchange or purchase notes and is not under the supervision of the national or state banking authorities."

It will be noted that one of the elements looked to by the Court in distinguishing the Association, which was not a bank, from a joint stock land bank, which is, is the fact that the latter is designated as a depositary. A close study of the Federal Regulations set out above and their interpretation by the General Counsel of the Treasury shows, without question, that some of the duties which might be imposed upon depositaries and fiscal agents by the Treasurer, subsequent to their designation as such, involve the performance of banking functions. In the light of the foregoing, we, therefore, conclude that you would be without authority to accept and file articles of incorporation which, without limitation, purport to authorize the corporation to act as a depositary or fiscal agent for the United States.

In answering your third question we must again refer to our Opinion WW-77:

> "A corporation may be formed under the Texas Business Corpration Act with a purpose clause authorizing the corporation to engage in the business of accumulating and loaning money; selling and dealing in notes, bonds and securities; to subscribe for, purchase, invest in, hold, own, assign, pledge, and otherwise deal in and dispose of shares of capital stock, bonds, mortgages, debentures, notes, and other securities or obligations, contracts and evidences of indebtedness of foreign and domestic corporations not competing with each other in the same line of business; to borrow money or issue debentures for carrying out any or all of the purposes above enumerated; but without banking or insurance privileges." Opinion WW-77.

As pointed out above, the primary purpose of a Small Business Investment Company is to help small business concerns raise capital by making loans directly, or by purchasing the debentures of the small business concern.

After studying the Small Business Investment Act itself, the explanatory speech of Representative Patman, together with the proposed implementing regulations promulgated by the Small Business Administrator, we are of the opinion and so hold that a Small Business Investment Company can be chartered and operate in Texas under articles of incorporation the purpose clause of which contains the restrictive phrase "without banking or discounting privileges." This conclusion is reenforced by comparing the opinion in the Zeiss case, supra, with the way in which the Small Business Investment Company will operate under the Act in question. Among other

-8-

things, a Small Business Investment Company's loans will be restricted to "incorporated and unincorporated small business concerns." (In the Zeiss case the Association's loans were only to farmers for agricultural purposes); borrowers are required to purchase stock in an amount between two per cent and five per cent of the capital provided, as in the case of borrowers from the Brenham Production Credit Association.

By limiting the purpose "to act as depositary or fiscal agent of the United States when so designated by the Secretary of the Treasury" with the phrase "but without banking and discounting privileges" the company would be authorized to perform those functions lawfully required by the Secretary of the Treasury which do not infringe on banking functions. At the same time, it would be effectively prohibited from performing those duties of depositaries or fiscal agents which are considered prohibited banking functions.

## SUMMARY

The proposed purpose "to operate under the Small Business Investment Act of 1958" is not a fully stated purpose under Article 2.01 of the Texas Business Corporation Act. The Secretary of State is not authorized to accept and file articles of incorporation reciting that the corporation is to have all the powers specified in the Small Business Investment Act of 1958 including the power "to act as such a depositary or fiscal agent of the United States whenever designated by the Secretary of the Treasury." The foregoing phrase, when limited by the words ". . .but without banking or discounting privileges" is acceptable.

Very truly yours,

WILL WILSON
Attorney General of Texas

By R. V. Loftin, Jr.
Assistant Attorney General

RVL:jg

-9-

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

Houghton Brownlee, Jr.
Elmer McVey
Jay Howell

REVIEWED FOR THE ATTORNEY GENERAL
BY:
W. V. Geppert