SNEED, Circuit Judge:
This case involves a counterclaim for breach of contract, attorneys’ fees, and punitive damages brought by Billy Sparkman against his claimant, Merced Production Credit Association, in connection with Sparkman’s bankruptcy proceedings. The bankruptcy court found for Sparkman on the breach of contract issue but denied attorneys’ fees and punitive damages. The district court affirmed the bankruptcy court’s judgment. We agree with the district court with respect to punitive damages, but disagree with respect to attorneys’ fees. Thus, we affirm in part, reverse in part, and remand.
I.
FACTS
To finance his honey bee business, Spark-man borrowed money from the Merced Production Credit Association (MPCA).[1] MPCA secured the loan agreement by obtaining a security interest in Sparkman’s stock of bees, equipment, and other property. In conformity with the agreement as orally amended, Sparkman moved his bees from California to North Dakota in mid-1977 because of the greater potential honey yield there. Later that year, Sparkman fell behind in his payments. MPCA elected to forego its right to foreclose on Sparkman’s collateral, and the two parties reached another agreement. Under its terms Spark-man would turn over to MPCA a check received from a customer as payment for honey; MPCA would deposit the check and refund to Sparkman the surplus amount— approximately $8,600 — by which the check *1099 exceeded his current indebtedness; Spark-man would return the bees to California; and Sparkman would give MPCA a deed of trust on his last mortgageable real property-
The agreement was not carried out. Sparkman turned over the check and executed the deed of trust, but MPCA refused to refund the surplus. Consequently, Sparkman lacked funds to return the bees from North Dakota, and almost all the bees were killed by a frost in January, 1978. Because of these losses, Sparkman was unable to pay the loan installment due in March, 1978. MPCA then applied the surplus retained from the cheek to that installment and began foreclosure proceedings on its collateral, including the property subject to the deed of trust.
In April, 1978, Sparkman filed a Chapter XI bankruptcy petition (under the old Bankruptcy Act). MPCA filed its proof of claim. Sparkman objected to the claim, and counterclaimed, alleging tortious breach of contract and seeking damages for emotional distress, loss of property, business, and profits, and punitive damages.
The bankruptcy court held a five-day trial. It approved MPCA’s claim, as reduced, but rendered judgment for Sparkman on his counterclaim. The court found that MPCA did not enter into the December, 1977 agreement in good faith since it did not intend to refund the surplus proceeds from the check. The court concluded that the deed of trust was obtained by fraud because MPCA knew that Sparkman needed the proceeds to return his bees to California. The court awarded Sparkman damages for the destruction of his bees and for one year’s lost profits.
The bankruptcy court also granted Sparkman his costs of suit, but denied his request for damages for emotional distress and for attorneys’ fees. Although finding that MPCA’s conduct was “willful, malicious, and fraudulent,” the court held that MPCA was immune from liability for punitive damages because it was an instrumentality of the United States government. MPCA’s claim was set off against the damages and Sparkman was awarded the difference.
Sparkman appealed to the district court, arguing that: (1) the bankruptcy court abused its discretion in refusing to award him attorneys’ fees; (2) MPCA is not immune from punitive damages; and (3) the court’s calculation of actual damages was too low. In a brief opinion the district court affirmed.
Sparkman filed a timely appeal in this court, raising only the first two issues.
II.
ATTORNEYS’ FEES
The bankruptcy court held that Sparkman is not entitled to attorneys’ fees for his counterclaim om the security agreements and promissory. notes. The bankruptcy court relied on the so-called “American Rule” in rejecting the request for fees. This rule denies attorneys’ fees to a litigant in federal court in the absence of a contract, applicable statute, or other exceptional circumstance. Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). We reverse.
When a bankruptcy court adjudicates a contract claim in connection with a petition in bankruptcy, the court applies state law to the contract dispute unless the bankruptcy code provides otherwise. 4A Collier’s on Bankruptcy 170.04, at 60-62 n. 31 (14th ed. 1978). Moreover, the court should apply state law not merely in determining whether a breach of contract occurred, but also in deciding whether to award attorneys’ fees on the claim. See In Re Sonoma V, 23 B.R. 789, 796 (Bkrtcy. 9th Cir.1982); see also Klopfenstein v. Pargeter, 597 F.2d 150, 152 (9th Cir.1978) (state law governs award of attorneys’ fees when federal court sits in diversity jurisdiction); Matter of Comstock, 16 Idaho 1981) (state law fees award in case removed from state to bankruptcy court). Thus, Sparkman’s entitlement to attorneys’ fees in the present case turns on the applicable state law, not the American Rule. B.R. 206 (Bkrtcy.D. governs attorneys’
*1100 California law governs the substantive issues involved in Sparkman’s counterclaim. Under a California statute, the prevailing party in a contract action is entitled to reasonable attorneys’ fees if the contract specifically provides that attorneys’ fees shall be awarded to one of the parties.[2] The prevailing party need not be the party so designated. Sparkman signed security agreements and installment promissory notes which provided that, upon default or suit, he would pay attorneys’ fees to the secured party, MPCA. Sparkman is therefore entitled to attorneys’ fees from the secured party provided he is the prevailing party for the purposes of the statute.
Under California law, where claims and counterclaims arise in connection with a contract containing an attorneys’ fees provision, the party who obtains a favorable judgment is deemed to be the prevailing party even though he did not successfully obtain all the relief which he sought in the action. See, e.g., Epstein v. Frank, 125 Cal.App.3d 111, 124, 177 Cal. Rptr. 831, 838 (1982); Western Decor & Furnishings Industries, Inc. v. Bank of America, 91 Cal.App.3d 293, 311, 154 Cal. Rptr. 287, 297 (1979) (debtor is prevailing party where his nominal recovery exceeded that of secured party on cross complaint). According to this definition, Sparkman is the prevailing party.
Although Sparkman did not ask for attorneys’ fees until his post-trial motion for costs, this should not bar an award for attorneys’ fees. Under California law, attorneys’ fees are subsumed into costs. Moulin Electric Corp. v. Roach, 120 Cal.App.3d 1067, 175 Cal.Rptr. 111 (1981). Moreover, the preferred method for seeking such fees is by post-trial motion. See Beneficial Standard Properties, Inc. v. Scharps, 67 Cal.App.3d 227, 232 n. 3, 136 Cal.Rptr. 549, 552 n. 3 (1977) (such statutory fees are not damages and need not be specially averred).
We therefore hold that Sparkman is entitled to attorneys’ fees for the counterclaim, and remand this case to the district court to have reasonable attorneys’ fees determined.
III.
PUNITIVE DAMAGES
The bankruptcy court declined to hold MPCA liable to Sparkman for punitive damages because MPCA is an “instrumentality” of the United States. The court relied on the long-established principle that the United States, its agencies, and instrumentalities cannot be held liable for punitive damages unless there is express statutory authorization for such liability. See 28 U.S.C. §§ 2671, 2674; Missouri Pacific R.R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921).
Congress set up production credit associations as part of the Farm Credit Act of 1933, modeling them on the farm loan associations established 17 years earlier. The 1933 Act expressly declared the production credit associations to be instrumentalities of the United States. 48 Stat. 267 (1933) (now codified as amended at 12 U.S.C. § 2098).
In 1971, Congress amended the Farm Credit Act of 1933. The amendments retained the language of the earlier provision, and added to another section of the 1933 Act the words: “Each production credit association . .. shall continue as a federally chartered instrumentality of the United States.” 85 Stat. 597 (1971) (codified at 12 U.S.C. § 2091). The legislative history of the 1971 amendments explains that the 1933 language was “substantially retained to support the existing [production credit] associations as federal instrumentalities.” House Rep. No. 92-593, 92d Cong., 1st Sess., reprinted in 1971 U.S.Code Cong. & Admin. News 2091, 2109. Neither the 1933 Act nor *1101 the amendments to the Act made production credit associations subject to liability for punitive damages.
Sparkman contends, however, that the immunity from punitive damages normally enjoyed by federal instrumentalities should not apply here. He argues that punitive damages are available unless Congress explicitly immunizes such an instrumentality from such damages, that production credit associations are instrumentalities in name only, and that the “sue and be sued” clause in the 1933 Act, see 12 U.S.C. § 2093, opens production credit associations up to punitive damages liability. These arguments are without merit.
First, Sparkman inverts the immunity rule. The sovereign, along with its agencies and instrumentalities, enjoys immunity from suit unless it waives that immunity. Federal Housing Administration v. Burr, 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940). A federal instrumentality, therefore, retains its immunity from punitive damages unless Congress explicitly authorizes liability for such damages. See, e.g., California v. Department of the Navy, 431 F.Supp. 1271, 1293 (N.D.Cal.1977), aff’d, 624 F.2d 885 (9th Cir.1980).[3]
Second, a federal instrumentality does not divest itself of the privileges of instrumentality status when it acts more like a privately owned institution than a federal agency. See Rust v. Johnson, 597 F.2d 174, 177-78 (9th Cir.) (Federal National Mortgage Association remains an instrumentality even though it acts as a “Government-sponsored private corporation” in the absence of legislative history or statutory authority to support the conclusion that Congress intended to strip the Association of its federal instrumentality status), cert. denied, 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979). Moreover, production credit associations are more than private institutions with a federal charter. Courts have recognized the “pervasive involvement of the federal government in the creation and operation of the production credit associations.” Schlake v. Beatrice Production Credit Association, 596 F.2d 278, 281 (8th Cir.1979). See also Brenham Production Credit Association v. Zeiss, 153 Tex. 132, 264 S.W.2d 95, 98 (1953) (production credit association is primarily a means of assistance for farmers, and not a mere commercial venture).
Finally, while the “sue and be sued” clause in the enabling legislation for production credit associations waives sovereign immunity from ordinary lawsuits, it does not subject production credit associations to liability for punitive damages. Such immunity must be waived expressly. See Painter v. Tennessee Valley Authority, 476 F.2d 943 (5th Cir.1973) (federal instrumentality not liable for punitive damages despite “sue and be sued” clause in charter without express congressional authorization for such liability).
The judgment of the district court is affirmed in part, and reversed in part. We remand this case to the district court to have determined the reasonable attorneys’ fees on Sparkman’s counterclaim.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. MPCA is one of many production credit associations chartered under the Farm Credit Act of 1933. See 12 U.S.C. §§ 2001-2259. The purpose of the Act and of the Farm Credit System is “to encourage farmer- and rancher-borrowers’ participation in the management, control, and ownership of a permanent system of credit for agriculture which will be responsive to the credit needs of all types of agricultural producers....” 12 U.S.C. § 2001(b).

. In any action on a contract, where the contract specifically provides that attorney’s fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney’s fees in addition to costs and necessary disbursements.
Cal.Civ.Code § 1717.

. In Senter v. Amtrak, 540 F.Supp. 557, 560 (D.N.J.1982), the court held that Amtrak is subject to liability for punitive damages. The court pointed out, however, that Amtrak’s enabling statute provided specifically that Amtrak would not be an agency or instrumentality of the United States. Moreover, the legislative history indicated that Congress wanted to secure Amtrak’s vigilance in protecting passengers from accidents by exposing Amtrak to liability for punitive damages. Id. at 650-61. There was no parallel concern surrounding the establishment of production credit associations.